UNITED STATES COURT OF INTERNATIONAL TRADE
------------------------------------------------------------------ X
TAO MOTOR INC.,                                     :
                                                    :
            Plaintiff,                              :
                                                    :
      v.                                            :        No. 25-cv-00199
                                                    :
UNITED STATES,                                      :
                                                    :
            Defendant.                              :
------------------------------------------------------------------ X

<u>COMPLAINT</u>

Plaintiff TAO MOTOR INC., for its Complaint in this action, does hereby state and allege as follows:

<u>ADMINISTRATIVE ACTION TO BE REVIEWED</u>

1.    Plaintiff seek judicial review of the affirmative final injury and critical circumstances determinations made by the U.S. International Trade Commission ("Commission" or "ITC") in the antidumping and countervailing duty investigations involving Certain Low Speed Personal Transportation Vehicles from the People's Republic of China ("PRC" or "China"). Plaintiff contest certain factual findings and legal conclusions that resulted in the Commission's affirmative final injury and critical circumstances determinations. The Commission's notice of final determination was published on August 7, 2025. *See* Low Speed Personal Transportation Vehicles From China, 90 Fed. Reg. 38,176 (Int'l Tr. Comm'n, Aug. 7 2025). The determination and views of the Commission are contained in Low Speed Personal Transportation Vehicles from China, Inv. Nos. 701-TA-731 and 731-TA-1700 (Final), USITC Pub. 5652 (Aug. 2025) ("Final Determination").

## JURISDICTION

2.      This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 19 U.S.C. § 1516a(a)(2)(B)(i). This Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(c), which confers upon the Court exclusive jurisdiction over civil actions commenced under 19 U.S.C. § 1516a.

## STANDING OF PLAINTIFF

3.      Plaintiff, TAO MOTOR INC., is an interested party as defined in 19 U.S.C. § 1677(9)(a), and participated in the proceeding under appeal. Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c), and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4.      On August 7, 2025, the Commission published in the Federal Register a notice of a final affirmative injury determination and affirmative finding of critical circumstances. *See* Low Speed Personal Transportation Vehicles From China; Determinations 90 Fed. Reg. 38,176 (Int'l Tr. Comm'n, August, 7 2025). The Summons commencing this action was timely filed with this Court on September 8, 2025. *See* ECF 1.

5.      This Complaint is filed within the time specified in 19 U.S.C. 1516a(a)(2) and 28 U.S.C. § 2636(c), having been filed within 30 days of the filing of the Summons.

## STATEMENT OF CLAIM

6.      The Commission's affirmative final injury and critical circumstances determinations with respect to the antidumping and countervailing duty investigations involving Certain Low Speed Personal Transportation Vehicles from the People's Republic of China are unsupported by substantial evidence on the record and otherwise contrary to law as set out in Count I and Count II below.

2

## HISTORY OF THE CASE

7.      On June 20, 2024, the Commission began its preliminary antidumping and countervailing duty investigations of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China following the receipt of petitions filed by the American Personal Transportation Vehicles Manufactures Coalition (the "Petitioner"), a coalition composed of Club Car, LLC of Evans, Georgia; and Textron Specialized Vehicles, Inc. of Augusta, Georgia. The coalition alleged that subject imports, were or were likely to be, sold for exportation to the United States at less than fair value, and that such imports were materially injuring or threatening to injure an industry in the United States.

8.      On August 9 2024, the Commission issued an affirmative preliminary determination. *See* Low Speed Personal Transportation Vehicles From China Determinations, 89 Fed. Reg. 65398 (Int'l Tr. Comm'n, Aug. 9, 2024).

9.      On December 6, 2024, Commerce issued its preliminary affirmative countervailing duty and critical circumstances determinations. *See* Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination, 89 Fed. Reg. 96942 (Dep't Commerce, Dec. 6, 2024).

10.     On January 30, 2025, Commerce issued its preliminary affirmative less than fair value and critical circumstances determinations. *See* Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures, 90 Fed. Reg. 8517

(Dep't Commerce, Jan. 30, 2025). The Commission then scheduled its final investigation. *See* Low Speed Personal Transportation Vehicles From China; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations, 90 Fed. Reg. 9345 (Int'l Comm'n, Feb. 11, 2025).

11.     On June 12, 2025 the Commission held a hearing in the final investigation. *Id.*

12.     On June 23, 2025 Commerce published its final antidumping, countervailing duty and critical circumstances determinations. *See* Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 90 Fed. Reg. 26530 (Dep't Commerce, June 23, 2025), Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, 90 Fed. Reg. 26536 (Dep't Commerce, June 23, 2025).

13.     On July 17, 2025, the Commission voted in the antidumping and countervailing duty investigations finding that subject imports were causing harm to the domestic industry and that critical circumstances were during the investigation stage of the proceeding. The Commission's determinations were published in the Federal Register on August 7, 2025. *See* Low Speed Personal Transportation Vehicles From China; Determinations 90 Fed. Reg. 38,176 (Int'l Tr. Comm'n, Aug., 7 2025).

14.     On August 4, 2025, the Commissions views were published in USITC Pub. 5652.

15.     This case was timely filed on September 8, 2025 pursuant to 19 U.S.C. 1516a(a)(2) and 28 U.S.C. § 2636(c).

## COUNT I

16.     Paragraphs 1 through 15 are incorporated by reference as though fully set forth herein.

17.     To make an affirmative material injury determination, the Commission must find that: (1) material injury existed; and (2) the material injury was caused by reason of the subject imports.

18.     To determine whether a domestic industry has been materially injured or threatened with material injury by reason of unfairly subsidized or less than fair value imports, the Commission shall consider *inter alia* the factors set forth under 19 U.S.C. § 1677(7)(B): (I) the volume of imports of the subject merchandise; (II) the effect of imports of that merchandise on prices in the United States for domestic like products; and (III) the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States.

19.     In its injury determination, the Commission improperly analyzed the impact of increased demand on domestic producers and importers.

20.     The Commission improperly overlooked differences in levels of trade between imported rolling chassis and domestic fully assembled goods.

21.     The Commission failed to properly analyze the fact that subject imports had virtually no impact on the domestics' fleet market sales.

22.     The Commission failed to properly analyze domestics' investments in added capacity and research and development during the period of investigation.

23.     The Commission failed to correctly analyze pricing behavior during the period of investigation.

24.     As a result of these errors, the Commission's final affirmative injury determinations are not supported by substantial evidence on the record and are not in accordance with law.

## COUNT II

25.     Paragraphs 1 through 24 of this Complaint are incorporated by reference, as though fully set forth herein.

26.     Critical circumstances exist where Commerce finds that "there have been massive imports of the subject merchandise over a relatively short period," 19 U.S.C. § 1673d(a)(3), and the Commission finds that those imports "are likely to undermine seriously the remedial effect of the antidumping duty order,"; *id*. § 1673d(b)(4)(A)(i). An affirmative finding of critical circumstances results in antidumping duties going into effect 90 days earlier than would be the case in the absence of critical circumstances —referred to as "retroactive application." *Id.* §§ 1673b(e)(1), 1673d(c)(4).

27.     The Commission is required to consider whether: (I) the timing and the volume of the imports {identified by Commerce}; (II) a rapid increase in inventories of the imports, and (III) any other circumstances indicating that the remedial effect of the order will be seriously undermined. *See* 19 U.S.C. §§ 1671d(b)(4)(A)(ii), 1673d(b)(4)(A)(ii).

28.     In its Critical Circumstances Determination, the Commission failed to consider key pricing information, such as the unit value of the U.S. industry's U.S. shipments in 2024 was higher than in 2022, and its cost of goods sold/net sales ratio in 2024 was the same. The domestic industry earned both an operating and net profit in 2024, despite the alleged dumping.

29.     In its Critical Circumstances Determination, the Commission failed to consider substantial evidence, including the high antidumping and countervailing duty rates will curtail the subject imports, if not eliminate them entirely. Commerce's preliminary countervailing duty rates ranged from 22.84 percent to 515.37 percent, and its preliminary dumping margins ranged from 127.35 percent to 478.09 percent, while Commerce's final countervailing duty rates ranged from 31.45

percent to 679.44 percent, and its final dumping margins ranged from 119.39 percent to 478.09 percent. These are extremely high rates and certainly would prevent importers from importing any more subject merchandise. In addition, the Commission failed to consider other additional tariffs such as Section 301 and IEEPA duties.

30.    In its Critical Circumstances Determination, the Commission also failed to consider that, even if inventories preliminarily increased, the imposition of antidumping, countervailing and other duties in early 2025 will prevent importers from increasing any further importers. The combined rates at 100% or more will preclude further import activity.

31.    Finally, in its Critical Circumstances Determination, the Commission also failed to consider that, an estimated one-half of the golf cart market are deals made through leasing and financing arrangements. Record evidence indicates that subject imports had very limited market penetration of the fleet end-user and leasing and financing channels. Such market segments are virtually impenetrable to foreign producers. U.S. producers can rely on this form of sale and maintain profits from this market.

32.    As such, the Commission's Critical Circumstances Determination is not supported by substantial evidence and is otherwise not in accordance with law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and enter an order holding:

1. That the Final Injury Determination by the Commission with respect to Low Speed Personal Transportation Vehicles from the PRC is unsupported by substantial evidence and is otherwise not in accordance with law;

2. That the Critical Circumstances Determination by the Commission in the Final Determination with respect to Low Speed Personal Transportation Vehicles from the PRC is unsupported by substantial evidence and is otherwise not in accordance with law–

3. Remand the Final Determination to the Commission with instructions to correct the errors set forth in this Complaint; and

4. Providing Plaintiff such further and additional relief as this Court may deem just and appropriate.

Respectfully Submitted,

/s/ John M. Peterson
John M. Peterson
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

/s/ Richard F. O'Neill
Richard F. O'Neill
Neville Peterson LLP
*Counsel for Plaintiff*
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648
roneill@npwny.com

Dated:  October 8, 2025