**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JANE A. RESTANI, SENIOR JUDGE**

<table>
<tr><td>

TAO MOTOR, INC.,

    **Plaintiffs,**

  **and**

KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD. AND SC AUTOSPORTS, LLC D/B/A KANDI AMERICA, VEXAS CORPORATION D/B/A ATLAS,

    **Consolidated Plaintiffs,**

    **v.**

UNITED STATES,
    **Defendant,**

  **and**

THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALATION,

    **Defendant-Intervenors.**

</td><td>

**Consol. Court No. 25-00199**

**PUBLIC VERSION**
**BPI REDACTED ON PAGES 12, 14-15, 19**

</td></tr>
</table>

<u>**PLAINTIFF TAO MOTOR'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com
*Counsel to Plaintiff*

March 18, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

RULE 56.2 STATEMENT ........................................................................................................ 2

I.    Administrative Determination Under Review ..................................................... 2

II.   Issue Presented and Summary of Argument ...................................................... 2

STATEMENT OF FACTS ....................................................................................................... 4

STANDARD OF REVIEW ...................................................................................................... 7

ARGUMENT ............................................................................................................................ 8

    I.    The Commission's Critical Circumstances determination is unsupported by substantial evidence on the record, is arbitrary and capricious and does not satisfy statutory requirements .................................................................................................. 8

    a.    The Standard for Commission "Critical Circumstances" Findings is Exacting .................. 8

    b.    The Commission Majority Failed to Correctly Account for those "Retroactive Assessment Period" Entries for Which Commerce Made "Critical Circumstances" Determinations from those for Which Commerce Did Not Make Such Findings. ............................................ 11

    c.    The Commission Majority Failed to Consider Other Relevant Evidence About Market Conditions .................................................................................................................... 16

    d.    Commissioner Johanson's Dissent Correctly Applied the Legal Test.............................. 18

**CONCLUSION** ..................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Altx, Inc. v. United States*, 370 F.3d 1108 (Fed. Cir. 2004). ............................................................. 7

*Arlanxeo USA LLC v. United States*, 389 F. Supp. 3d 1330 (Ct. Int'l Tr., 2019). ........................... 8

*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962) ............................................................ 8

*Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137 (Fed. Cir. 1987) ......................... 8

*Comm. for Fair Beam Imports v. United States*, 477 F. Supp. 2d 1313 (Ct. Int'l Tr. 2007) ......... 8

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197  (1938) ................................................................ 7

*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367  (Fed. Cir. 2016). ................................. 3, 7

*Dak Ams. LLC v. United States*, 456 F. Supp. 3d 1340 (Ct. Int'l Tr. 2010) ................................... 3

*Dak Ams. LLC v. United States*, 456 F. Supp. 3d 1340 (Fed. Cir. 2016). ...................................... 3

*Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017) ......................................... 7

*Motor Vehicle Mfrs. Ass'n of United States v. State Farm Auto Ins. Co.*, 463 U.S. 29 (1983) ...... 8

*MTD Prods. Inc. v. United States*, 2023 Ct. Intl. Trade LEXIS 37, (2023) ................................... 13

*Nucor Corp. v. United States*, 318 F. Supp. 2d 1207  (Ct. Int'l Tr. 2004) ...................................... 8

*Nucor Corp. v. United States*, 594 F. Supp. 2d 1320 (Ct. Int'l Tr. 2008) ....................................... 8

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ........ 7

*Sweet Harvest Foods v. United States*, 155 F.4th 1355 (Fed. Cir. 2025) ...................................... 10

*Timken U.S. Corp. v. United States*, 421 F.3d 1350  (Fed. Cir. 2005) .......................................... 8

*Universal Camera Corp. v. NLRB,* 340 U.S. 474 (1951) ................................................................... 7

**Statutes**

19 U.S.C. § 1516a ............................................................................................................................ 2, 7

19 U.S.C. § 1671d .................................................................................................................... 10, 11, 12

19 U.S.C. § 1673d ....................................................................................................................... 9, 10, 14

19 U.S.C. § 2411 ................................................................................................................................. 16

28 U.S.C. § 2636 .................................................................................................................................. 7

**Other Authorities**

Cambridge English Dictionary, definition of insidiously, Dictionary.Cambridge.org, https://dictionary.cambridge.org/us/dictionary/english/insidiously ((last accessed March 18, 2026). ......................................................................................................................................... 10

*Certain  Preserved Mushrooms from China, India, and Indonesia*, Inv. Nos. 731-TA-777-779 (Final), USITC Pub. 3159 (Feb. 1999) ......................................................................................... 9, 10

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 26,530 (Dep't Commerce, June 23, 2025) ......................................................................................................................................... 6, 13

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 96942 (Dep't Commerce, Dec. 6, 2024). ........................................................................................................................................................ 5

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less Than-Fair Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8,517 (Dep't Commerce, Jan. 30, 2025). ....................................................................................................................... 5, 15

*Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 26536 (Dep't Commerce, June 23, 2025)..................................... 6

*Elastic Rubber Tape from India,* Inv. No. 731-TA-805 (Final), USITC Pub. 3200 (June 1999)... 9

*Low Speed Personal Transportation Vehicles From China Determinations*, Investigation Nos. 701–TA–731 and 731– TA–1700 (Preliminary), 89 Fed. Reg. 65,398 (Int'l Tr. Comm'n, Aug. 9, 2024). .................................................................................................................................. 4

*Low Speed Personal Transportation Vehicles From China; Determinations, Investigation No.* 701-TA-731 and 731-TA-1700, 90 Fed. Reg. 38,176 (August 7, 2025). .................................. 2, 4, 7

*Low Speed Personal Transportation Vehicles From China; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations*, 90 Fed. Reg. 9,345 (Int'l Comm'n, Feb. 11, 2025). .................................................................................................................... 5

Merriam-Webster Dictionary, definition of "insidious," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/insidious (last accessed March 18, 2026). ...... 10

*New York Customs Ruling N355050 of November 18, 2025* ........................................................ 18

The Free Dictionary, definition of insidiously, thefreedictionary.com, https://www.thefreedictionary.com/insidiously (last accessed March 18, 2026). .................... 10

Uruguay Round Agreements Act *Statement of Administration Action*, accompanying H.R. Doc. No. 103-826, 892 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 4040.................................... 8

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JANE A. RESTANI, SENIOR JUDGE**

| | |
|---|---|
| TAO MOTOR, INC., <br><br>          **Plaintiff,** <br><br>   **and** <br><br> KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD. AND SC AUTOSPORTS, LLC D/B/A KANDI AMERICA, VEXAS CORPORATION D/B/A ATLAS, <br><br>        **Consolidated Plaintiffs,** <br><br>     **v.** <br><br> UNITED STATES, <br>          **Defendant,** <br><br>   **and** <br><br> THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALATION, <br><br>        **Defendant-Intervenors.** | **Consol. Court No. 25-00199** <br><br><br> **PUBLIC VERSION** <br> **BPI REDACTED ON PAGES 12, 14-15, 19** |

## PLAINTIFF TAO MOTOR'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

In accordance with Rules 7, 56.2, 73.2, and 81(h) of the United States Court of International Trade ("USCIT R."), and this Court's Scheduling Order of December 19, 2026 (ECF No. 25), Plaintiff Tao Motor, Inc. ("Tao Motor") hereby submits Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record. Plaintiff challenges as unsupported by substantial evidence, and otherwise not in accordance with the law, the final determination of the U.S. International Trade Commission

(the "Commission" or "USITC") in *Low Speed Personal Transportation Vehicles From China; Determinations, Investigation No.* 701-TA-731 and 731-TA-1700, as published in the Federal Register. *See* 90 Fed. Reg. 38,176 (August 7, 2025) ("Final Determination"). This action is brought pursuant to section 516A(a)(2)(A)(i)(I) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I).

Administrative record documents are cited herein according to the descriptions set forth in the Index to the Administrative Record (*see e.g.*, ECF Nos. 20 and 21), and according to their confidential and/or public record number, as appropriate (i.e., "(C.R.__)" and "(P.R.__)")

## RULE 56.2 STATEMENT

### I.    Administrative Determination Under Review

This action involves a challenge to the Commission's final affirmative finding of critical circumstances in *Low Speed Personal Transportation Vehicles From China; Determinations, Investigation No.* 701-TA-731 and 731-TA-1700, as published in the Federal Register. *See* 90 Fed. Reg. 38,176 (August 7, 2025).

### II.    Issue Presented and Summary of Argument[1]

**A. Whether the Commission's final affirmative finding of critical circumstances determination is supported by substantial evidence and is otherwise in accordance with the law?**

No. The Commission erred because it failed to properly take into consideration substantial evidence on the record. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373

---

[1] Tao Motor pled an additional count concerning the Commission's Final Injury Determination, but because Plaintiff only submitted briefs on the critical circumstances issue during the administrative process it does not argue this count in this motion. USITC Pub. 5652: Low Speed Personal Transportation Vehicles from China, Inv. Nos. 701- TA-731 and 731-TA-1700 (Final) (Aug. 2025) P.R. 211, C.R. 320 at FN 7.

(Fed. Cir. 2016). Here, there is a significant amount of "contradictory evidence or evidence from which conflicting inferences could be drawn" that the Commission did not adequately address. *Dak Ams. LLC v. United States*, 456 F. Supp. 3d 1340, 1358 (Ct. Int'l Tr. 2010) (citing *Dak Ams. LLC v. United States*, 456 F. Supp. 3d 1340, 1373 (Fed. Cir. 2016).

In this case, the Commission failed to take into consideration numerous important factors, as pointed out by Commissioner Johanson in his dissent. (P.R. 211 at 62, C.R. at 321). The Commission failed to take into account the relatively small number of "critical circumstances" imports, specifically in the antidumping duty investigation and the fact that the number of critical circumstances imports it identified in the countervailing duty investigation is based not on evidence but on an "adverse inference" renders its determination unsupported by substantial evidence. In addition, the Commission also failed to consider that an estimated one-half of the domestic golf cart market consists of fleet sales and deals made through leasing and financing arrangements, and that foreign producers are unable to penetrate this market segment. (P.R. at 193, C.R. 283 at 13).

The Commission majority insufficiently noted that the plaintiffs imported low speed personal transportation vehicles ("LSPTV") on which antidumping and countervailing duties have not been assessed during the critical circumstances period, which resulted in an increase in inventory levels of subject merchandise. (P.R. 211 at 75, C.R. 320 at 59). If this were the case, any inventory increase would trigger the application of the extraordinary "critical circumstances" remedy. The Commission must, taking into account all market conditions, state how these added inventories "undermine seriously" the efficacy of the antidumping and countervailing duty orders issued in this case. As Commissioner Johansson noted in his Dissenting Views, domestic producers had already been given extraordinary protection from injury by imports, in the form of significant

special tariffs which were already being impose on Chinese imports. (P.R. 211 at 66, C.R. 321 at 7).

This case should be remanded to the Commission for further consideration of these important factors.

## STATEMENT OF FACTS

This case involves the Commission's final investigation into the *Low Speed Personal Transportation Vehicles From China; Determinations, Investigation No.* 701-TA-731 and 731-TA-1700, as published in the Federal Register. *See* 90 Fed. Reg. 38,176 (August 7, 2025).

On June 20, 2024, the Commission began its preliminary antidumping and countervailing duty investigations of LSPTV from the People's Republic of China following the receipt of petitions filed by the American Personal Transportation Vehicles Manufactures Coalition ("Petitioner"), a coalition composed of Club Car, LLC of Evans, Georgia; and Textron Specialized Vehicles, Inc. of Augusta, Georgia. (P.R. 211 and C.R. 320 at 3). The coalition alleged that subject imports, were or were likely to be, sold for exportation to the United States at less than fair value, and that such imports were materially injuring or threatening to injure an industry in the United States. On August 9 2024, the Commission issued an affirmative preliminary determination. *See Low Speed Personal Transportation Vehicles From China Determinations*, Investigation Nos. 701–TA–731 and 731– TA–1700 (Preliminary), 89 Fed. Reg. 65,398 (Int'l Tr. Comm'n, Aug. 9, 2024). (P.R. at 81).

On December 6, 2024, Commerce issued its preliminary affirmative countervailing duty and critical circumstances determinations. *See Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances, in Part, and*

4

*Alignment of Final Determination With Final Antidumping Duty Determination,* 89 Fed. Reg. 96,942 (Dep't Commerce, Dec. 6, 2024). In the countervailing duty investigation, the U.S. Department of Commerce ("Commerce") preliminary found that critical circumstances existed with respect to Guangdong Lvtong New Energy Electric Vehicle Technology Co., Ltd. ("Guangdong Lvtong"), and the non-responsive companies (Shandong Odes and Hebei Machinery); but not with respect to Xiamen Dalle New Energy Automobile Co., Ltd ("Xiamen Dalle") and all other producers and exporters. It subsequently amended that determination to find "critical circumstances" as to Xiamen Dalle and the other producers, not based on an analysis of pre-petition and post-petition imports, but rather it "relied on facts otherwise available, including with an adverse inference, pursuant to sections 776(a) and (b) of the Act." *Id.* at 96,943.

On January 30, 2025, Commerce issued its preliminary affirmative less-than-fair-value (LTFV) and critical circumstances determinations in the companion antidumping investigation. *See Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less Than-Fair Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8,517 (Dep't Commerce, Jan. 30, 2025). In the less-than-fair-value investigation, Commerce preliminarily determined that critical circumstances exist with respect to imports of Guangdong Lvtong, Xiamen Dalle, the non-selected respondents eligible for a separate rate, and the China-wide entity. *Id.* The Commission then scheduled its final investigation. *See Low Speed Personal Transportation Vehicles From China; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations*, 90 Fed. Reg. 9,345 (Int'l Comm'n, Feb. 11, 2025). (P.R. at 105).

On June 12, 2025 the Commission held a hearing in the final investigation. (P.R. 211 at 253). On June 23, 2025, Commerce published its final antidumping, countervailing duty and critical circumstances determinations. *See Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 26,530 (Dep't Commerce, June 23, 2025), *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 26536 (Dep't Commerce, June 23, 2025).

In the final phase of the injury investigation, the Commission must also issue a determination regarding critical circumstances. If both Commerce and the Commission make affirmative final critical circumstances determinations, certain subject imports may be subject to retroactive duties for entries made within 90 days prior to the preliminary countervailing and antidumping duty determinations. In this case the Commission majority, consisting of Commissioners Karpel and Kearns, made a single final "critical circumstances" determination. Commissioner Johansson concurred in the Commission's finding of material injury, but dissented regarding the finding of "critical circumstances."

As discussed below, the statute sets a high standard for Commission findings of critical circumstances. It is a "but for test" which asks "but for" the assessment of antidumping and countervailing duties on entries made within 90 days prior to Commerce's preliminary affirmative LTFV and subsidy determinations, whether the efficacy of the antidumping and countervailing duty orders ultimately issued would be "undermined seriously." That standard is not met in this

case. The evidentiary record supports a negative "critical circumstances" determination for all exporters.

On July 17, 2025, the Commission voted in the antidumping and countervailing duty investigations finding that subject imports were causing harm to the domestic industry and that critical circumstances were present during the investigation stage of the proceeding. (P.R. 205). The Commission's determinations were published in the Federal Register on August 7, 2025. *See Low Speed Personal Transportation Vehicles From China; Determinations* 90 Fed. Reg. 38,176 (Int'l Tr. Comm'n, Aug., 7 2025). On August 4, 2025, the Commission's views were published in USITC Pub. 5652, P.R. 211, C.R. 320. C.R. 321. This case was timely filed on September 8, 2025 pursuant to 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 2636(c).

## STANDARD OF REVIEW

The Commission's determinations must be supported by substantial evidence. Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence." *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (*citing Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *CS Wind Vietnam Co. v. United States*, 832 F.3d 1373 (Fed. Cir. 2016). This includes "contradictory evidence or evidence from which conflicting inferences could be drawn." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487 (1951)).

The possibility of drawing two inconsistent conclusions from the evidence does not prevent the court from holding that the Commission's determinations, findings, or conclusions are

supported by substantial evidence. *Arlanxeo USA LLC v. United States*, 389 F. Supp. 3d 1330, 1337 (Ct. Int'l Tr., 2019). Moreover, "it is not the province of the Court to reweigh the evidence before the agency." *Comm. for Fair Beam Imports v. United States*, 477 F. Supp. 2d 1313, 1326 (Ct. Int'l Tr. 2007), aff'd, 260 Fed. Appx. 302 (Fed. Cir. 2008). But it remains true that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of United States v. State Farm Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

However, the Commission is "presumed to have considered all of the evidence on the record," and "is not required to explicitly address every piece of evidence presented by the parties." *Nucor Corp. v. United States*, 318 F. Supp. 2d 1207, 1247 (Ct. Int'l Tr. 2004) (internal citation omitted), *aff'd*, 414 F.3d 1331 (Fed. Cir. 2005). The Commission need not "make an explicit response to every argument made by a party, but [current law] instead requires that issues material to the agency's determination be discussed so that the 'path of the agency may reasonably be discerned' by a reviewing court." *Timken U.S. Corp. v. United States,* 421 F.3d 1350, 1354 (Fed. Cir. 2005) (quoting the Uruguay Round Agreements Act *Statement of Administration Action* ("SAA"), accompanying H.R. Doc. No. 103-826, 892 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 4040); *see also Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987). *Nucor Corp. v. United States*, 594 F. Supp. 2d 1320, 1332 (Ct. Int'l Tr. 2008).

## ARGUMENT

    I.    **The Commission's Critical Circumstances determination is unsupported by substantial evidence on the record, is arbitrary and capricious and does not satisfy statutory requirements**

        a.    **The Standard for Commission "Critical Circumstances" Findings is Exacting**

8

Critical circumstances exist where Commerce finds that "there have been massive imports of the subject merchandise over a relatively short period," 19 U.S.C. § 1673d(a)(3), and the Commission finds that those imports "are likely to undermine seriously the remedial effect of the antidumping duty order,"; *id.* § 1673d(b)(4)(A)(i). An affirmative finding of critical circumstances results in antidumping duties going into effect 90 days earlier than would be the case in the absence of critical circumstances — referred to as "retroactive application." *Id.* §§ 1673b(e)(1), 1673d(c)(4). An affirmative finding of critical circumstances expands the temporal reach of antidumping and countervailing duty orders, and should only be made in the rarest of cases.

The Commission has consistently interpreted the statutory language as setting forth an exacting standard[2] and has explained that the "undermine seriously" test establishes a high bar for an affirmative critical circumstance determination:

---

[2] 5 *See, e.g., Elastic Rubber Tape from India,* Inv. No. 731-TA-805 (Final), USITC Pub. 3200 (June 1999) at 52  (stating that "the plain meaning of the term 'undermine seriously' establishes a very high standard"); *Certain  Preserved Mushrooms from China, India, and Indonesia*, Inv. Nos. 731-TA-777-779 (Final), USITC Pub. 3159 (Feb. 1999) at 27-28 ("*Certain Preserved Mushrooms ITC Final*").

> {T}he plain meaning of the term "undermines seriously" establishes a very high standard: that the surge in imports greatly and insidiously[3] weakens or subverts the effects of the order.[4]

In making a "critical circumstances" determination, the Commission is required to consider whether: (I) the timing and the volume of the imports {identified by Commerce}; (II) a rapid increase in inventories of the imports, and (III) any other circumstances indicating that the remedial effect of the order will be seriously undermined. *See* 19 U.S.C. §§ 1671d(b)(4)(A)(i), 1673d(b)(4)(A)(ii).

Although the "critical circumstances" test does not focus solely on the time period after antidumping or countervailing duty orders issue, *Sweet Harvest Foods v. United States*, 155 F.4th 1355, 1363 (Fed. Cir. 2025), it requires a showing that the imports made during the retroactive assessment period are more than just indicators of material injury to the domestic producers of like products. It requires the Commission to find that "but for" the imposition of the retroactive tariff, the orders ultimately issued would fail to operate as intended. In this case, the Commission

---

[3] "Insidiously" is defined by the Cambridge English Dictionary as "in a way that gradually and secretly causes harm." Cambridge English Dictionary, definition of insidiously, Dictionary.Cambridge.org, https://dictionary.cambridge.org/us/dictionary/english/insidiously ((last accessed March 18, 2026). The Free Dictionary defines the term as "working or spreading harmfully in a subtle or stealthy manner." The Free Dictionary, definition of insidiously, thefreedictionary.com, https://www.thefreedictionary.com/insidiously (last accessed March 18, 2026). The Merriam-Webster Dictionary defines "insidious" as "developing so gradually as to be well established before becoming apparent." Merriam-Webster Dictionary, definition of "insidious," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/insidious (last accessed March 18, 2026). These definitions imply that a finding of "critical circumstances" must rest on determinations that entries made during the retroactive assessment period will in some way undermine the antidumping or countervailing duty order both to a significant degree, and over an extended period of time. It is insufficient that the Commission majority in this case noted that "critical circumstances" entries would swell importers' inventories for a limited time pending sell-off; a future effect that diminishes the efficacy of the order must also be present.

[4] *Certain Preserved Mushrooms* ITC Final at 28.

majority did not explain how the retroactive assessment period entries would subvert the remedial effects of the orders, nor did it explain why the imposition of duties thereon would, in some hidden and gradual manner, subvert the operation of the orders against LSPTV from China.

### b. The Commission Majority Failed to Correctly Account for those "Retroactive Assessment Period" Entries for Which Commerce Made "Critical Circumstances" Determinations from those for Which Commerce Did Not Make Such Findings.

In making its "critical circumstances" determination, the Commission majority was required to focus on the impact only of those imports for which Commerce had made its affirmative "critical circumstances" determination. The record does not reflect that the Commission majority made and applied this crucial distinction, particularly in the countervailing duty investigation.

Thus, the countervailing duty statute, speaking of "critical circumstances" determinations, provides in relevant part as follows:

(2) Critical circumstances determinations

If the final determination of the administering authority is affirmative, then that determination, in any investigation in which the presence of critical circumstances has been alleged under section 1671b(e) of this title, shall also contain a finding as to whether-

(A) the countervailable subsidy is inconsistent with the Subsidies Agreement, and

(B) there have been massive imports of the subject merchandise over a relatively short period.

Such findings may be affirmative even though the preliminary determination under section 1671b(e)(1) of this title was negative.

*See* 19 U.S.C. § 1671d(a)(2).

The same section, when speaking of the Commission's findings of "critical circumstances" provides:

11

**BPI MATERIAL REDACTED PURSUANT TO APO**

(4) Certain additional findings

(A) Commission standard for retroactive application -

(i) In general -If the finding of the administering authority under subsection (a)(2) is affirmative, then the final determination of the Commission shall include a finding **as to whether the imports subject to the affirmative determination under subsection (a)(2)** are likely to undermine seriously the remedial effect of the countervailing duty order to be issued under section 1671e of this title.

(ii) Factors to consider -In making the evaluation under clause (i), the Commission shall consider, among other factors it considers relevant-

(I) the timing and the volume of the imports,

(II) any rapid increase in inventories of the imports, and

(III) any other circumstances indicating that the remedial effect of the countervailing duty order will be seriously undermined.

*See* 19 U.S.C. § 1671d(b)(4). (Emphasis added). The Commission is not to base its determination on all imports made during the retroactive assessment period, but only on the imports from the exporters for which Commerce made an affirmative "critical circumstances" determination. Here, there is no indication the Commission majority determination was based on substantial evidence.

As noted above, in the countervailing duty investigation, Commerce only made preliminary "critical circumstances" determinations with respect to one responding exporter, Guangdong Lytong, and two non-participating exporters, Shandong Odes and Hebei Machinery. It did not find critical circumstances with respect to Xiamen Dalle and "all other" producers. This is crucial, since the Commission's Staff Report indicates that, during 2024, Xiamen Dalle accounted for [          ] of reported Chinese LSPTV production and [          ] of all reported exports to the United States. (P.R. 201 and C.R. 293 at Table 7.2). Thus, only a minor share of retroactive assessment period shipments were subject to "critical circumstances" determinations. The

12

Commission majority does not indicate that these relatively few exports triggered the conditions to "seriously undermine" the countervailing duty order it issued.

As noted above, however, in its final countervailing duty determination, Commerce did a "turn around" and found that "critical circumstances" did exist with respect to Xiamen Dalle and other exporters. This was not based on a revision of the pre-and post-petition import numbers — which presumably didn't change — but on Commerce's application of "facts available" and an adverse inference. *See* 90 Fed. Reg. 26,537 (June 23, 2025). It is difficult to conceive of how the substitution of an "adverse inference" for objective numbers could constitute "substantial evidence" for Commerce's determination, much less the Commission's. The Commission collected pre-and post-petition import figures, but apparently did not consult them in making its own "critical circumstances" determination. That the Commission based its critical circumstances determination on Commerce's "adverse inference" rather than evidence on the record before it undermines that determination. The matter should be remanded for the Commission to undertake such a fact-based analysis.

Case law also confirms that the Commission's "critical circumstances" determination must be based on the effect of only those imports which Commerce found to be subject to "critical circumstances." "For its part, the Commission found 'that imports **subject to Commerce's affirmative critical circumstances determinations** in the antidumping and countervailing duty investigations are likely to undermine seriously the remedial effect of the antidumping and countervailing duty orders.'" *MTD Prods. Inc. v. United States*, 2023 Ct. Intl. Trade LEXIS 37, *5, (2023) (Emphasis added). Where the Commission's finding is based on Commerce's non-evidentiary "adverse inference" rather than data appearing on the Commission record, it is not based on substantial evidence.

13

The statutory language governing Commerce and Commission "critical circumstances" determinations in antidumping investigations are substantially identical to those for countervailing duty investigations. *See* 19 U.S.C. §§ 1673d(a)(3), 1673d(b)(4). The latter subsection requires the Commission to determine "whether the imports **subject to the affirmative determination under subsection (a)(3)** are likely to undermine seriously the remedial effect of the antidumping duty order to be issued under section 1673e of this title." (Emphasis added). In its preliminary less-than-fair-value ("LTFV") determination, Commerce found "critical circumstances" for all exporters, but in its final LTFV determination, withdrew its "critical circumstances" determination for Xiamen Dalle, by far the largest Chinese producer and exporter of LSPTVs.

It appears that the Commission, in considering "critical circumstances" adjusted its calculations to exclude from consideration those subject imports which had not been part of Commerce's final "critical circumstances" determinations. It found that pre-petition imports of LSPTV were [          ] units, and post-petition imports were [          ] units – an increase of [          ] units ― styled by the majority as an increase of [          ]. (P.R. 311 at 54-55 and C.R. 320 at 72).

However, this number represented only [          ] of total 2024 consumption of [          ] units and only [          ] of consumption of domestically-produced LSPTVs for that year. (P.R. 201 and C.R. 293 at Table 4.11). The Commission majority made no attempt to explain how this relatively small quantity of vehicles subject to Commerce's "critical circumstances" determination constituted a volume of imports which "undermines seriously" the remedial effect of the antidumping order or "greatly and insidiously" subverts that order.

Furthermore, when these "critical circumstances" quantities were added to inventories of imported subject merchandise, those end-of-period inventories [                    ] were only

14

**BPI MATERIAL REDACTED PURSUANT TO APO**

[          ] higher than import inventories the prior year. (P.R. 201 and C.R. 293 at Table 7.11). Across the period of investigation, the ratio of import inventories to import shipment fluctuated, from [          ] in 2022 to [          ] in 2024, before plummeting to [          ] in 2024. *Id.* This hardly represents a massive stockpiling of inventory which could "undermine seriously" the effectiveness of antidumping orders.

In the countervailing duty investigation, the Commission noted that Commerce had preliminarily made a negative determination of critical circumstances with respect to Xiamen Dalle and all producers other than Guangdong Lvtong, but in its final determination found critical circumstances with respect to all Chinese vehicles, not based on those producers pre-and-post-petition shipments, but rather because it "relied ... on facts otherwise available." *See 90* Fed. Reg 8,517 (Dep't Commerce, Jan. 30, 2025). Treating all imports as being subject to "critical circumstances" findings by Commerce, the Commission noted that there had been increases in import volumes and inventories. Although these findings were quantitatively different than in the antidumping duty investigation, the market conditions following issuance of the Commission's countervailing duty injury determination were no different than in the antidumping investigation — high subsidy rates and the 100% ad valorem tariff effectively made continued imports of most LSPTVs untenable.

In this regard, the Commission's findings respecting "critical circumstances" in the countervailing duty investigation, particularly with respect to the "volume" and "inventory" factors, are suspect. The Commission is required to render its determination on the basis of the record before it, and that determination must be supported by substantial evidence on the Commission record. Whether the "substantial evidence" requirement in this regard is supported by the Commission's adoption of a non-evidence-based conclusion of Commerce which includes

application of an "adverse inference" — not quantified in the Commission's record — is questionable. Xiamen Dalle and the other producers were first determined by Commerce not to have substantially increased their exports after the filing of the petition. This finding was then replaced by an "adverse inference" drawn by another agency, possibly as a result of the failure of one or more companies to provide Commerce with data on a totally unrelated issue. Nothing suggests that the quantity of Xiamen Dalle's retroactive assessment period imports carried from Commerce's preliminary to final countervailing duty determination. By contrast, the record before the Commission shows those producers' pre-and-post-petition shipments. (P.R. 201 and C.R. 293 at Tables 4.10, 4.11, 4.12). In determining whether imports in the "retroactive assessment" period would "undermine seriously" the effectiveness of the antidumping and countervailing duty orders in this case — a task given the Commission, but not Commerce — the Commission should have at least considered its evidence of shipments by Xiamen Dalle and other producers, rather than blindly rely on Commerce's "adverse inference." The Commission's failure to do so when assessing whether those importers "seriously undermine" the orders issued leaves the Commission's determination unsupported by substantial evidence, and requires the Court to remand that aspect of the critical circumstances determination for further consideration.

c. **The Commission Majority Failed to Consider Other Relevant Evidence About Market Conditions**

In considering other factors, the Commission failed to note that when the antidumping and countervailing duty orders were issued, the United States had imposed high tariffs on Chinese electric vehicles, which make up the vast majority of all subject LSPTVs. On May 14, 2024, President Biden announced that he was increasing the rate of retaliatory tariffs imposed on electric vehicles ("EVs") from China under Section 301 of the Tariff Act of 1930, 19 U.S.C. § 2411, from 25% *ad valorem* to 100% *ad valorem*. These tariffs were economically prohibitive of continued

16

import of Chinese EVs, such that the efficacy of the antidumping and countervailing duty orders in this case were hardly essential to ensure protection of domestic producers from import injury. The "critical circumstances" period imports could hardly be said to "seriously undermine" the effectiveness of the antidumping and countervailing duty orders on LSPTVs.

Thus, a proper examination of the relevant legal factors — timing and volume of "critical circumstances" imports, their effect on inventories, and most critically their impact on the efficacy of the antidumping and countervailing duty orders – shows the Commission majority's position is not supported by substantial evidence when viewed against the high standard set for Commission "critical circumstances" findings.

The Commission majority's attempt to bolster its decision by noting that imports undersold domestic products during the period of investigation is of limited evidentiary value when the price comparisons consulted are not directly correlated with the imports which were the basis for Commerce's critical circumstances determination.

In its Critical Circumstances Determination, the Commission failed to consider key pricing information, such as that the unit value of the U.S. industry's shipments in 2024 was higher than in 2022, and its cost of goods sold/net sales ratio in 2024 was the same. The domestic industry earned both an operating and net profit in 2024, despite the alleged dumping.

The Commission's critical circumstances determination is further weakened by its failure to consider substantial evidence, including that the high antidumping and countervailing duty rates will curtail the subject imports, if not eliminate them entirely. Commerce's preliminary countervailing duty rates ranged from 22.84% to 515.37%, and its preliminary dumping margins ranged from 127.35% to 478.09%, while Commerce's final countervailing duty rates ranged from 31.45% to 679.44%, and its final dumping margins ranged from 119.39% to 478.09%. These are

17

extremely high rates and certainly would prevent importers from importing any more subject merchandise. As noted above, the Commission majority failed to consider other additional tariffs such as the exceptionally high Section 301 and IEEPA levies.

In its Critical Circumstances Determination, the Commission also failed to consider that, even if inventories preliminarily increased, the imposition of antidumping, countervailing and Section 301 duties, taken together, effectively prevented importers from increasing any further imports. The combined rates at 100% or more will preclude further import activity.[5]

Finally, in its Critical Circumstances Determination, the Commission also failed to consider that, an estimated one-half of the golf cart market consists of deals made through leasing and financing arrangements. Record evidence indicates that subject imports had very limited market penetration of the fleet end-user and leasing and financing channels. Such market segments are virtually impenetrable to foreign producers. U.S. producers can rely on this form of sale and maintain profits from this market.

As such, the Commission's Critical Circumstances Determination is not supported by substantial evidence and is otherwise not in accordance with law.

### d.  Commissioner Johanson's Dissent Correctly Applied the Legal Test.

Commissioner Johanson correctly dissented from the Commission's finding regarding the existence of "critical circumstances" in these cases.

Measuring "critical circumstances" using the questionable data from Commerce's final countervailing duty determination, he conceded that "unfairly traded imports subject to a

---

[5] Indeed, Tao Motor and several other producers have relocated their production of LSPVTs from China to Vietnam. *See, e.g., New York Customs Ruling N355050 of November 18, 2025* (confirming Vietnamese origin for golf carts made in Vietnam with Chinese and Vietnamese parts by Vietnam Hengyu EV Co. Ltd).

Commerce critical circumstances determination will compete with domestic products and thus, exacerbate the injury to some degree." (P.R. 211 at 65 and C.R. 321 at 5). The statute, however, directs the Commission to consider whether those imports are likely to "undermine" the remedial effect of the order and if so, whether they do so "seriously." (P.R. 211 at 65 and C.R. 321 at 5).

First, he noted that while the domestic industry had experienced material injury from subject imports, it was not acute, and that –

> . . . although the domestic industry has suffered material injury, its condition was not particularly acute in 2024, the last year of the POI, which includes periods both before and after the petitions.  The unit value of the U.S. industry's U.S. shipments in 2024 was higher than in 2022, and its COGS/net sales ratio in 2024 was essentially the same as in 2022.  The domestic industry continued to earn both an operating and a net profit in 2024, albeit at diminished levels, and its operating margin in 2024 was [     ] percent and its net margin was [     ] percent.

(P.R. 211 at 64-65 and C.R. 321 at 5).

He noted that the domestic industry invested capital, increased its research and development expenditures and installed capacity over the period of investigation, resulting in a much higher production capacity at the end of the period of investigation than at its start. (P.R. 211 at 65 and C.R. 321 at 6). Further, he noted that the very high antidumping and countervailing duty margins imposed in the investigation would seriously curtail any future imports of subject merchandise and pointed to the special circumstance that beginning in 2024, Section 301 tariffs on electric vehicles offered further protection to domestic producers:

> Moreover, effective September 27, 2024, section 301 tariffs on LSPTVs from China that entered under HTS subheading 8703.90.01 were increased from 25 percent to 100 percent, while starting on February 4, 2025, tariffs based on the International Emergency Economic Powers Act ("IEEPA") were imposed on LSPTVs and subassemblies from China starting at a 10 percent rate, increasing to 20 percent on March 4, 2025 and to 30 percent on April 5, 2025. The effect and duration of these tariffs is uncertain.  Yet, the standard for an affirmative critical circumstances determination is whether massive imports are "likely" to seriously undermine the remedial effect of the orders.  Under this standard, I find that these additional tariffs are more likely than not to impede further subject imports and thus

19

reduce the risk that further imports, even fairly traded ones, could disturb the ability of U.S. producers to benefit from the orders.

(P.R. 211 at 66 and C.R. 321 at 7).

Commissioner Johanson found that high dumping margins would deter importers from selling inventories at injuriously low prices and would constrain foreign producers and importers from using low prices to increase market share. He also noted that fleet sales, which were almost wholly captured by domestic producers, would continue to provide domestic producers the opportunity to remain profitable. Commissioner Johanson made similar findings in respect of the antidumping duty investigation.To be certain, the Commissioner indicated that some unfairly traded vehicles might enter the United States market after imposition of the orders, but this alone was insufficient to trigger a finding that "critical circumstances" were present.

Analyzing market conditions as the statute requires the Commission to do, the dissent concluded:

> While such volumes could be expected to have some continuing impact on the domestic industry, for the reasons above I do not find these subject imports are likely to seriously undermine the effectiveness of the antidumping duty order. The domestic industry remained relatively healthy at the end of 2024 for an industry that suffered material injury, e.g., it was still profitable on both an operating and a net basis, it was expanding capacity, the unit values of its shipments were higher than at the start of the POI, and it was continuing capital expenditures and increasing research and development expenditures. Furthermore, dumping and countervailing duty rates are high and are now combined with additional tariffs; high tariffs and duties disincentivize importers to use low pricing to gain additional market share; and even before provisional relief the domestic industry had managed to preserve overwhelming predominance in a very important market segment, golf cart fleet sales.

## **CONCLUSION**

"Critical circumstances" determinations are rarely made, and the standard for making them is a high one. Massive imports made in a short post-petition period of time must not merely affect

the market once antidumping and countervailing duty orders are issued, they must "seriously undermine" the effectiveness of those orders. There is no substantial evidence on the record in this case to establish that this will occur. The possibility of some material injury is not enough. Rather, the evidence indicates that the domestic industry is in relatively good condition, and will receive more than sufficient protection from the Section 301 and IEEPA tariffs imposed on subject merchandise, not to mention the antidumping and countervailing duty orders, which impose very high rates of duty. There is no reason to extend the relief granted the domestic petitioners beyond the period normally identified in the statute.

For the reasons set forth herein, Plaintiff, Tao Motor, respectfully submits that Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record should be granted, and this Court should remand the investigation back to the Commission for further reconsideration or explanation.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com
*Counsel to Plaintiff*

March 18, 2026

21

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JANE A. RESTANI, SENIOR JUDGE**

| |
|---|
| **TAO MOTOR, INC.,**<br><br>    **Plaintiffs,**<br><br> **and**<br><br>**KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD. AND SC AUTOSPORTS, LLC D/B/A KANDI AMERICA, VEXAS CORPORATION D/B/A ATLAS,**<br><br>    **Consolidated Plaintiffs,**<br><br>    **v.**<br><br>**UNITED STATES,**<br>    **Defendant,**<br><br> **and**<br><br>**THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALATION,**<br><br>    **Defendant-Intervenors.** |

**Consol. Court No. 25-00199**

## CERTIFICATE OF COMPLIANCE

I, John M. Peterson, a partner in the New York City office of Neville Peterson LLP, who is responsible for the instant Rule 56.2 Motion for Judgment on the Agency Record, certify that it complies with the word count limitation under the Court's Standard Chambers Procedures and contains 5,850 words.

2

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson

Dated: March 18, 2026

2