## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

Tao Motor Inc.
                    Plaintiff,

        and

Kangdi Electric Vehicle (Hainan) Co.,
Ltd. and SC Autosports, LLC, dba
Kandi America, Vexas Corporation
dba Atlas,
                    Consolidated Plaintiffs,


                        v.

UNITED STATES,
                    Defendant,

        and

THE AMERICAN PERSONAL
TRANSPORTATION VEHICLE
MANUFACTURERS COALATION,
                    Defendant-Intervenors.

Consol. Court No. 25-00199
Court No. 1:25-cv-00201-JAR

**CONSOLIDATED PLAINTIFFS KANGDI ELECTRIC VEHICLE (HAINAN)
CO., LTD., AND SC AUTOSPORTS, LLC'S  RULE 56.2 MOTION FOR
JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of
International Trade, consolidated Plaintiffs Kangdi Electric Vehicle (Hainan) Co.,
Ltd., and SC Autosports, LLC, dba Kandi America ("Kangdi Plaintiffs"), by and
through their undersigned counsel, respectfully move for judgment on the agency
record with respect to the United States International Trade Commission's (the
"Commission") final affirmative critical circumstances determination in the

1

antidumping investigation on Certain Low Speed Personal Transportation Vehicles from the People's Republic of China, 90 Fed. Reg. 38176 (August 7, 2025). The Commission's full determination and views were published as *Low Speed Personal Transportation Vehicles from China*, Inv. No. 731-TA-1700 (Final), USITC Pub. 5652 (Aug. 2025).

Kangdi Plaintiffs respectfully move, for the reasons set forth in the accompanying memorandum, that this Court find that agency findings, conclusions, and decisions with respect to the critical circumstances are not supported by substantial evidence or otherwise contrary to law. Kangdi Plaintiffs further move this Court to remand this determination to Commerce for disposition consistent with the Court's final opinion.

Dated: March 18, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
/s/ Johnathan Foege
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America*

2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| Tao Motor Inc.<br>　　　　　Plaintiff,<br><br>　　and<br><br>Kangdi Electric Vehicle (Hainan) Co.,<br>Ltd. and SC Autosports, LLC, dba<br>Kandi America, Vexas Corporation<br>dba Atlas,<br>　　　　　　Consolidated Plaintiffs,<br><br>　　　　　　　　v.<br><br>UNITED STATES,<br>　　　　　Defendant,<br><br>　　and<br><br>THE AMERICAN PERSONAL<br>TRANSPORTATION VEHICLE<br>MANUFACTURERS COALATION,<br>　　　　　Defendant-Intervenors. | Consol. Court No. 25-00199<br>Court No. 1:25-cv-00201-JAR |

## [PROPOSED] ORDER

Upon consideration of Kangdi Electric Vehicle (Hainan) Co., Ltd., and SC Autosports, LLC, dba Kandi America's (collectively "Kangdi Plaintiffs") Rule 56.2 Motion for Judgment on the Agency Record and the accompanying memorandum, and upon all other papers filed and proceedings had herein, it is hereby

**ORDERED** that Kangdi Plaintiffs' motion for judgment on the agency record is granted; and it is further

**ORDERED** that this action is remanded to the U.S. Department of Commerce for proceedings consistent with this Court's opinion.

Dated: _____, 2026    _____

New York, New York    Jane Restani, Senior Judge

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Tao Motor Inc.<br>　　　　　Plaintiff,<br><br>　　and<br><br>Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America, Vexas Corporation dba Atlas,<br>　　　　　Consolidated Plaintiffs,<br><br>　　　　　v.<br><br>UNITED STATES,<br>　　　　　Defendant,<br><br>　　and<br><br>THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALATION,<br>　　　　　Defendant-Intervenors. | Consol. Court No. 25-00199<br>Court No. 1:25-cv-00201-JAR<br><br>Public Version<br>Business Proprietary Information removed from pages: 11-14, 16, 18-19 |

**KANGDI PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

LIANG + MOONEY, PLLC
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan) America*

**Dated: March 18, 2026**

Consol. Court No. 25-00199                          PUBLIC VERSION

TABLE OF CONTENTS

I. Introduction...................................................................................................... 1

II. Statement Pursuant to Rule 56.2(c)............................................................. 2

    A. Administrative Determination Under Review................................................ 2

    B. Issues Presented..........................................................................................3

        1. Does Substantial Record Evidence Support The Commission's Finding That There Was A "Massive" Increase In Imports Over A Relatively Short Period In Relation To The Comparison Period?...................................................3

        2. Did The Facts In The Investigation Meet The High Threshold For Finding That Post-Petition Imports Undermine The Remedial Effects Of AD Measures?............................................................................................................. 4

    C. Request for Court Order and Relief Sought.................................................4

III. Procedural Background And Determination Under Review.................... 4

IV. Standard of Review........................................................................................ 7

V. Arguments........................................................................................................ 9

    A. The Evidence Does Not Support A Finding That There Has Been A "Massive" Surge In Subject Imports............................................................... 10

    B. The Commission Failed To Consider Substantial Evidence On The Record Indicating That Subject Imports Are Not Likely To Undermine Seriously The Antidumping Order....................................................................................... 14

        1. Factors the Commission Must Consider..................................................... 14

        2. The Commission Did Not Properly Adjust Its Determination to Reflect Exclusion of Xiamen Dalle's Imports................................................................17

        3. The timing and volume of the imports are consistent with industry seasonal trends instead of conscious efforts to avoid potential imposition of antidumping and countervailing duties............................................................ 18

        4. Sales and Operations Data Suggests Subject Imports Unlikely to Seriously Undermine Effect of Order.................................................................................. 19

        5. High Duty Rates Will Curtail Imports On Their Own................................. 19

        6. Other Tariffs Will Impede or Significantly Reduce the Quantity of Subject Imports.................................................................................................................20

        7. Subject Imports Have Limited Market Penetration Of Fleet End-Use And Financing Channels............................................................................................ 20

VI. Conclusion..................................................................................................... 21

i

Consol. Court No. 25-00199                    PUBLIC VERSION

## TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
791 F. Supp. 2d 1327 (Ct. Int'l Trade 2011) .............................................................. 8

*Allegheny Ludlum Corp. v. United States,*
287 F.3d 1365 (Fed. Cir. 2002) .............................................................. 9

*DuPont Teijin Films USA v. United States,*
407 F.3d 1211 (Fed. Cir. 2005) .............................................................. 7

*Learning Resources, Inc. v. Trump,*
2026 WL 477534 .............................................................. 20

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) .............................................................. 9

*Mid Continent Nail Corp. v. United States,*
846 F.3d 1364 (Fed. Cir. 2017) .............................................................. 8

Mitsubishi Materials Corp. v. United States,
820 F. Supp. 608 (Ct. Int'l Trade 1993) .............................................................. 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) .............................................................. 21

*Star Fruits S.N.C. v. United States,*
393 F.3d 1277 (Fed. Cir. 2005) .............................................................. 8

*Sweet Harvest Foods v. United States,*
669 F. Supp. 3d 1346 (Ct. Int'l Trade 2023) .............................................................. 7, 8

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) .............................................................. 7

19 U.S.C. § 1673d .............................................................. 2

19 U.S.C. § 1673d(b)(4)(A) .............................................................. 8, 14, 17, 21

19 U.S.C. § 1677f(i)(3)(B) .............................................................. 9

19 U.S.C. § 2411 .............................................................. 1

**Consol. Court No. 25-00199**                          **PUBLIC VERSION**

28 U.S.C. § 1581(c) ................................................................................. 2

Omnibus Trade and Competitiveness Act of 1988 ........................................ 6, 15

Uruguay Round Agreements Act of 1994 ...................................................... 6

**Other Authorities**

*Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order*, 90 Fed. Reg. 38759 (Aug. 12, 2025) .......................................................3, 5, 19

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part,*
90 Fed. Reg. 26530 (June 23, 2025) ........................................................... 5

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair-Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures,*
90 Fed. Reg. 8517 (Jan. 30, 2025) ........................................................... 5, 19

*Low Speed Personal Transportation Vehicles from China,*
90 Fed. Reg. 38176 (Aug. 7, 2025) ........................................................... 2, 6

*Low Speed Personal Transportation Vehicles From China Determinations,*

89 Fed. Reg. 65398 (August 9, 2024) ......................................................…… 5

Consol. Court No. 25-00199                              PUBLIC VERSION

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD

### I.    Introduction

Plaintiffs, Kangdi Electric Vehicle (Hainan) Co., Ltd., and SC Autosports, LLC, dba Kandi America (hereinafter referred to as "Kangdi Plaintiffs"), respectfully submit this memorandum in support of their Rule 56.2 motion for judgment on the agency record in the above-captioned matter. For the reasons set forth herein, the critical circumstances determination regarding low speed personal transportation vehicles ("LSPTV") from the People's Republic of China ("China") issued by the United States International Trade Commission (the "Commission") is not in accordance with law and is unsupported by substantial evidence. Thus, Kangdi Plaintiffs respectfully request that this determination be reversed and, if necessary, remanded to the Commission.

More specifically, this action challenges the affirmative critical circumstances determination of the Commission regarding LSPTV from China, resulting in the issuance of an antidumping duty order that directs U.S. Customs and Border Protection ("CBP") to collect ninety days of additional duties on such entries prior to the suspension of liquidation, as authorized under certain circumstances, pursuant to section 2411 of the Trade Act of 1974, 19 U.S.C. § 2411. Kangdi Plaintiffs challenge this determination pursuant to section 516a of the Tariff Act of 1930, which provides that certain final determinations on the record are reviewable by this Court, including affirmative findings of critical circumstances. 19 U.S.C. §§

1

1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(i) *et seq*. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

Critical circumstances are an extraordinary measure and a significant departure from the default prospective application of remedies intended to curb sales at less than fair value. To affirmatively determine that there are critical circumstances warranting retroactive application, the Commission must make a finding, supported by substantial evidence on the record, that importers "have seriously undermined the remedial effect" of the antidumping order "by massively increasing imports prior to the effective date of relief." *Views of the Commission*, at 66 (CR 320). This standard, which has rarely been met, has not been met in the investigation of LSPTVs from China that gives rise to the instant action.

## II.    Statement Pursuant to Rule 56.2(c)

### A. Administrative Determination Under Review

This action is an appeal of the final affirmative determination of critical circumstances by the Commission under 19 U.S.C. § 1673d, as implemented in the antidumping duty order on LSPTV from China. The Commission's determination regarding imports of LSPTV from China in investigation nos. 701-TA-731 and 731-TA-1700 was published in the Federal Register on August 7, 2025. *See Low Speed Personal Transportation Vehicles from China*, 90 Fed. Reg. 38176 (August 7, 2025) (PR 215); *see also Low Speed Personal Transportation Vehicles from China*, Inv. no. 731-TA-1700 (Final), USITC Pub. 5652 (Aug. 2025) (PR 211). The final antidumping duty order was issued by the Department of Commerce on August 12,

2

Consol. Court No. 25-00199                         PUBLIC VERSION

2025. *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order*, 90 Fed. Reg. 38759 (August 12, 2025) ("Commerce's Amended Final AD Determination").

      B.  Issues Presented

Kangdi Plaintiffs raise challenges to the final affirmative critical circumstances determination by the Commission pertaining to the following issues:

      1. *Does Substantial Record Evidence Support The Commission's Finding That There Was A "Massive" Increase In Imports Over A Relatively Short Period In Relation To The Comparison Period?*

No, the Commission failed to consider evidence on the record. Kangdi Plaintiffs and other respondents submitted evidence showing that during the comparison period used by the Commission to evaluate critical circumstances, the volume of imports in the post-petition period mirrors the expected increase in the third and fourth quarters, consistent with the data on the record for the three years prior to the filing of the petition. *Commission Hearing Transcript* (June 12, 2025) (PR 191), at 165 (ll. 1-12), 178-79 (l. 25, ll. 1-20), 181-82 (ll.18-25, 1-24); 255-56 (ll.18-25, 1-25), *et al.* This increase is consistent with seasonal trends, and otherwise did not vastly deviate from expected industry import patterns.

3

> 2. *Did The Facts In The Investigation Meet The High Threshold For Finding That Post-Petition Imports Undermine The Remedial Effects Of AD Measures?*

No, the Commission failed to consider substantial evidence on the record indicating that subject imports are not likely to seriously undermine the remedial effect of the AD Order. The final determination fails to take into account evidence showing that sales of subject imports already in inventory would not exacerbate the injury to domestic industry. The final determination also fails to consider the inhibitory impact of the high antidumping duty rates and the impeditive impact of other tariffs such as Section 301 tariffs and tariffs based on the International Emergency Economic Powers Act ("IEEPA"). Moreover, the final determination fails to take into account the evidence on the record that subject imports have limited market penetration of the fleet end-use and financing channels.

C.  Request for Court Order and Relief Sought

Kangdi Plaintiffs respectfully request that the Court remand the challenged agency action for further consideration regarding the issues identified in Subsection B above.

## III.    Procedural Background And Determination Under Review

The American Personal Transportation Vehicles Manufacturers Coalition ("Petitioner") filed petitions concurrently at the Commission and the Department of Commerce on June 20, 2024, alleging sales at less than fair value of LSPTV from China. The Commission subsequently initiated investigation nos. 701-TA-731 and

4

731-TA-1700 to determine whether the U.S. LSPTV industry was materially injured by reason of imports of LSPTV from China. Notice of the Commission's preliminary determination was published on August 9, 2024, and the Commission published its preliminary findings on August 12, 2024. *Low Speed Personal Transportation Vehicles From China Determinations*, 89 Fed. Reg. 65398 (August 9, 2024) (PR 81); USITC, *Low Speed Personal Transportation Vehicles From China*, Inv. Nos. 701-TA-731 and 731-TA-1700 (Preliminary) (Aug. 2024) (PR 83).

Commerce initiated its investigation on July 11, 2024, and published its preliminary results on January 30, 2025. *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair-Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8517 (January 30, 2025) ("Commerce's Preliminary Determination"). On August 12, 2025, Commerce published its affirmative final determinations in the antidumping investigation of LSPTV from China. *See Commerce's Amended Final AD Determination*. Commerce determined no critical circumstances existed with respect to imports from Chinese producer Xiamen Dalle but found critical circumstances existed for all other producers. *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 26530 (June 23, 2025).

5

The Commission unanimously determined that the domestic industry is materially injured by reason of imports of LSPTVs from China on August 7, 2025. *Low Speed Personal Transportation Vehicles from China; Determinations*, 90 Fed. Reg. 38176 (August 7, 2025) (PR 215). The majority of the Commissioners also found that subject imports of LSPTV from China are likely to undermine seriously the remedial effect of the antidumping duty order. *Views of the Commission*, at 79 (August 6, 2025) (CR 320).

However, Commissioner David S. Johanson dissented from the majority's affirmative critical circumstances determination. *Dissenting Views of Commissioner David S. Johanson* (August 6, 2025) (CR 321) ("Dissenting Views"). Commissioner Johanson stated in his dissent that the record should be analyzed using the factors in The Omnibus Trade and Competitiveness Act of 1988 (the "1988 Act") since the current version of the critical circumstances provision was enacted by the Uruguay Round Agreements Act of 1994 ("URAA") which states, in its Statement of Administrative Action ("URAA SAA"), that the factors under the URAA are "essentially reformulations of many of the factors" in the 1988 Act, and that "even though not specifically mentioned in the bill, may be relevant in particular investigations." *Id.*, at 1-3, n. 3.

As Commissioner Johanson's dissenting opinion pertains to the antidumping duty investigation, the Commissioner diverged from the majority in finding that the imports are not likely to seriously undermine the remedial effects of the antidumping duty order. *Id.*, at 5. Commissioner Johanson based his opinion on the

6

domestic industry's condition over the period of investigation, the curtailing effect of the high antidumping duty rate and other tariffs, reduced incentive for importers to sell inventories at less than fair value, and limited penetration of fleet end-user and leasing and financing channels. *Id.*, at 5-10.

The affirmative finding of critical circumstances by the majority of the Commission is unsupported by the record evidence and otherwise contrary to law.

## IV.    Standard of Review

Any Commission determination, finding, or conclusion "unsupported by substantial evidence on the record, or otherwise not in accordance with law" shall be held unlawful. 19 U.S.C. § 1516a(b)(1)(B)(i). In determining whether an agency determination, finding, or conclusion is based on substantial evidence, the court evaluates whether the agency action is reasonable when the record as a whole is taken into account. *Sweet Harvest Foods v. United States*, 669 F.Supp.3d 1346, 1350 (CIT, 2023).

"Substantial evidence has been described as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005)). The Commission must weigh all record evidence and cannot assert its determination is supported by substantial evidence while ignoring contradictory evidence. *Mitsubishi Materials Corp. v. United States*, 820 F. Supp. 608, 624 (Ct. Int'l Trade 1993); *see also Ad Hoc Shrimp Trade Action Comm. v. United States*, 791 F.Supp.2d 1327, 1334 (Ct. Int'l Trade 2011). In sum, when evaluating an issue

related to substantial evidence, the Court considers "whether the challenged agency action was reasonable given the circumstances prevented by the whole record." *Sweet Harvest*, 669 F.Supp.3d at 1351.

Specifically, as it pertains to a finding of critical circumstances, the Commission can only find critical circumstances if "the imports subject to the affirmative determination … are likely to *undermine seriously* the remedial effect of the antidumping order to be issued." 19 U.S.C. § 1673d(b)(4)(A)(ii) (emphasis added). The record evidence does not support such a finding in the investigation underlying the instant action.

For the Commission's determination to be "in accordance with law," it must comply with the antidumping duty statutes. Although the Commission has a certain degree of discretion, it must exercise such discretion reasonably and not act arbitrarily. *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372 (Fed. Cir. 2017). The Commission must exercise reasonable judgment and discretion when weighing relevant factors; its decision must be based on correct interpretation of the law and on factual findings supported by substantial evidence. *See Star Fruits S.NC. v. U.S.*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) ("An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighting relevant factors.").

Moreover, pursuant to 19 U.S.C. § 1677f(i)(3)(b), the final determination is required to address arguments by interested parties "concerning volume, price effects, and impact of industry imports of the subject merchandise."

The Court shall review the Commission's conclusions of law at issue in the instant action *de novo*. *Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1369 (Fed. Cir. 2002). The Court shall similarly review questions of statutory interpretation *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024) ("{A}gency interpretations of statutes…are *not* entitled to deference.").

## V.    Arguments

Application of retroactive duties to subject imports due to an affirmative finding of critical circumstances is an extraordinary measure that departs from the default prospective application of such trade remedies. The narrowly circumscribed exception requires the Commission to make a finding, supported by substantial evidence on the record, that importers "have seriously undermined the remedial effect" of the antidumping order "by massively increasing imports prior to the effective date of relief." Views of the Commission, at 66 (CR 320). Specifically, the Commission should evaluate "whether the surge in imports prior to the suspension of liquidation, rather than the failure to provide retroactive relief, is likely to seriously undermine the remedial effect of the order." *Id.*

The record lacks substantial evidence to indicate there has been a massive surge in imports and further lacks substantial evidence to support a finding that the imports of subject merchandise in the post-petition period analyzed would have

9

the effect of seriously undermining the remedial effect of the antidumping order. To the contrary, the record evidence refutes the claim that imports in the post-petition period are massive and instead indicates that those imports will not seriously undermine the remedial effect of the antidumping order.

A. The Evidence Does Not Support A Finding That There Has Been A "Massive" Surge In Subject Imports

To determine whether there has been a "massive" surge of imports of subject merchandise entered between the time the petition was filed and the preliminary determination, the Commission considers "import quantities prior to the filing of the petition with those subsequent to the filing of the petition using monthly statistics on the record regarding those firms for *which Commerce has made an affirmative critical circumstances determination*." *Id.*, at 67 (emphasis added).

Increase in imports over the comparison period is consistent with data for three years prior to the petition and seasonal trends in the industry. The period for comparison of pre-petition and post-petition levels of subject imports from China used by the Commission in the investigation underlying the instant action comprises the five months prior to the filing of the petition to the five months after the filing of the petition, i.e., February 2024 to June 2024 and July 2024 to November 2024. *Id.*, at 71.

In their prehearing brief, Kangdi Plaintiffs submitted that import data submitted by Petitioner in the Commerce proceeding for the period between January 2021 and August 2024 clearly demonstrates the seasonal trends of the

subject merchandise sales in the three calendar years prior to the year the petition was filed. *SC Autosports, LLC, dba Kandi America, and Kangdi Electric Vehicle (Hainan) Co., Ltd.'s Joint Prehearing Brief* (June 5, 2025), at 6 (PR 144/CR 272) ("Kangdi Prehearing Brief").

Other interested parties submitted similar arguments pertaining to seasonality. *See, e.g.*, *Joint Respondents' Pre-Hearing Brief* (June 6, 2025), at 44. 47-49 (PR 148/CR 276); *Joint Respondents' Post-Hearing Brief* (June 20, 2025), at 10-11 (PR 194/CR 281); *Tao Motor, Inc., Post-Hearing Brief* (June 20, 2025), at 2-6 (PR 193/PR 283). The data shows that each year subject imports increase in the third and fourth quarters. *Kangdi Prehearing Brief*, at 6  (PR 144/CR 272). Kangdi Plaintiffs reiterated these points in their Posthearing Brief and Final Comments. *SC Autosports, LLC, dba Kandi America and Kangdi Electric Vehicle (Hainan) Co., Ltd.'s Joint Post-Hearing Brief*, June 20, 2025 (PR 192/CR 282), at 4-6; *Final Comments of SC Autosports LLC dba Kandi America and Kangdi Electric Vehicle (Hainan) Co., Ltd.*, dated July 15, 2025 (PR 202/CR 318), at 4-5.

Commerce considered the increase in imports in the third and fourth quarters of 2024 as indicative of an "increase of imports and inventory buildup during the post-petition period…likely to exacerbate the adverse impact of the imports," yet the record evidence contradicts this conclusion. *Views of the Commission*, at 74 (CR 320). Even if the record supports a finding that the increase in imports in [                    ] was sufficient to be deemed "massive" and not in line with seasonal trends for the industry, the record shows that such an increase cannot

reasonably be found to undermine the remedial effect of the order at all, much less to *seriously* undermine it.

The average lead time for U.S. importers in 2024 was [      ] days. *Memorandum INV-XX-088 from Nannette Christ to the Commission, Investigation Nos. 701-TA-731 and 731-TA-1700 (Final): Low Speed Personal Transportation Vehicles from China– Staff Report* (July 7, 2025) (CR 293); *see also Memorandum INV-XX-092 from Nannette Christ to the Commission, Investigation Nos. 701-TA-731 and 731-TA-1700 (Final): Low Speed Personal Transportation Vehicles from China– Revisions to the Staff Report* (July 10, 2025) (CR 310) (collectively the "Final Staff Report"), at 2.15. Therefore, only imports after [                    ] can be potentially attributed to the petition and the potential antidumping duty order. Increased imports in [     ] is a typical trend and can be observed in the import data submitted by the Petitioner in the Commerce proceeding for the period between January 2021 and August 2024. *Kangdi Prehearing Brief*, at 6  (PR 144/CR 272). Nonetheless, despite the increase in import volume of subject merchandise in [      ], import volume in [                ] already drastically decreased, falling back to pre-petition levels. Keeping these significant lead times in mind, the record shows that the impending antidumping duty order already had a remedial effect.

The Commission's final affirmative critical circumstances determination failed to consider the evidence on the record, which shows that the surge in volume in the comparison period can be explained by the seasonal demand for subject imports in the latter half of the year.  The Commission recognized there may be

12

"some seasonal variations due to climate conditions" but countered that the [    ] difference between the comparison periods for 2024 was beyond the increases seen in previous years and therefore considered the increase massive enough to warrant proceeding to the next prong of analysis in the critical circumstances determination. *Views of the Commission*, at 71, n. 310. By accepting the notion of "some seasonal variations" but dismissing the [    ] increase as "beyond the increases seen in previous years", the Commission acted arbitrarily by not considering "an important aspect of the problem", namely the detailed evidence on the record submitted by Kangdi Plaintiffs and other respondents regarding the consistent, multi-year seasonal demand patterns for low speed personal transportation vehicles. This conclusory dismissal of the evidence pertaining to seasonal sales trends renders the determination that there was a "massive" surge unsupported by substantial evidence.

The Commission failed to consider evidence submitted by Kangdi Plaintiffs and other interested parties, which showed that the post-petition import volume in the comparison period—covering the third and fourth quarters—mirrors the expected increase for those quarters. Specifically, data on the record for the three years prior to the filing of the petition clearly demonstrates that subject imports increase each year during the third and fourth quarters. This established seasonal pattern indicates that the observed volume increase was consistent with general industry import patterns and not a "massive" surge intended to undermine the remedy.

Even if the increase in imports in [            ] were deemed "massive," evidence on the record contradicts the conclusion that this volume is likely to seriously undermine the remedial effect of the order. The import volume in [            ] already drastically decreased, falling back to pre-petition levels, which clearly shows that the possibility of an antidumping duty order had already had a remedial effect.

Given that the average lead time for U.S. importers in 2024 was [  ] days, only imports after [            ] could reasonably be attributed to efforts to avoid the duties following the petition's filing. The majority of the increase, therefore, is explained by the typical seasonal trend of increased imports in the latter half of the year, rather than a conscious effort to front-load merchandise.

### B. The Commission Failed To Consider Substantial Evidence On The Record Indicating That Subject Imports Are Not Likely To Undermine Seriously The Antidumping Order

#### 1. *Factors the Commission Must Consider*

To make an affirmative finding of critical circumstances in a final determination, the Commission must satisfy a two-part analysis. If the Commission determines that the domestic industry is materially injured by reason of subject imports from China and that there was a "massive" increase in imports over a relatively short period, the Commission must further make a finding of whether such imports "are likely to undermine seriously the remedial effect of the

14

antidumping duty order to be issued under section 1673e of the same title." 19 U.S.C. § 1673d(b)(4)(A)(ii).

Pursuant to statute, the Commission must consider, among other relevant factors:

I.   The timing and the volume of the imports;

II.  A rapid increase in inventories of the imports, and;

III. Any other circumstances indicating that the remedial effect of the antidumping order will be seriously undermined.

Additionally, Commissioner Johanson posits that the factors considered under The Omnibus Trade and Competitiveness Act of 1988 (the "1988 Act") should be considered. *Dissenting Views*, at 1-2. Under the 1988 Act, the Commission was instructed to consider the following factors:

I.   The condition of the domestic industry;

II.  Whether the massive imports of merchandise over a relatively short period of time can be accounted for by efforts to avoid the potential imposition of countervailing {or antidumping} duties;

III. Whether foreign economic conditions led to the massive imports of the merchandise; and

IV.  Whether the impact of the massive imports of the merchandise is likely to continue for some period after issuance of the countervailing {or antidumping} duty order.

*Id.*, at 2.

The Uruguay Round Agreements Act Statement of Administrative Action ("URAA SAA") states that the factors in the URAA are essentially reformulations of the factors in the 1988 Act and may be relevant in antidumping and/or countervailing duty investigations. *Id.*, at 3.

An evaluation of the record underlying the instant action using these factors shows that subject imports are not likely to seriously undermine the remedial effects of the antidumping duty order for the reasons set forth herein. As stated previously, the increase in imports in the post-petition period is consistent with the multi-year seasonal demand patterns for low speed personal transportation vehicles. The alleged "massive" imports of merchandise over a relatively short period of time cannot be accounted for by efforts to avoid the potential imposition of countervailing {or antidumping} duties. Moreover, the drastic decrease in import volume in [                    ] demonstrates that the possibility of an antidumping duty order had a remedial effect. The high antidumping duty and countervailing duty rates combined with other tariffs such as Section 301 tariffs and IEEPA tariffs made it impossible for the impact of the massive imports of the merchandise to continue for some period after issuance of the countervailing {or antidumping} duty order. If the Commission had considered these factors, it would not have made a critical circumstances determination.

16

2. *The Commission Did Not Properly Adjust Its Determination to Reflect Exclusion of Xiamen Dalle's Imports*

In its investigation, Commerce found that critical circumstances did not exist for respondent Xiamen Dalle. *See Commerce's Final Amended AD Determination*, at 38760. The plain language of 19 U.S.C. § 1673d(b)(4)(A)(i) states that the Commission is required to determine whether "imports *subject to the affirmative {critical circumstances} determination*…are likely to undermine seriously the remedial effect of the antidumping duty order." (emphasis added). Thus, the Commission's analysis should have excluded all of Xiamen Dalle's import and inventory data from all aspects of its critical circumstances analysis.

Instead, in its analysis of underselling and the market share of imports of subject merchandise, the Commission relied on pricing data that included *all* Chinese imports of LSPTVs rather than just those imports subject to the affirmative critical circumstances determination. *Views of the Commission*, at 74. Since Xiamen Dalle was not subject to Commerce's final affirmative critical circumstances decision, the Commission was required by statute to exclude Xiamen Dalle's data from these metrics. The Commission's reliance on data sets that included Xiamen Dalle's import data is contrary to law and resulted in flawed metrics on which the Commission based its analysis of underselling and market share and, consequently, in a flawed determination. Co-consolidated Plaintiff, Vexas Corporation dba Atlas ("Vexas") has made convincing arguments on this point;

17

Kangdi Plaintiffs fully support Vexas' arguments and incorporate them by reference. *See Pub. Dkt. 31/ Conf. Dkt. 30,* at 23-25.

> 3. *The timing and volume of the imports are consistent with industry seasonal trends instead of conscious efforts to avoid potential imposition of antidumping and countervailing duties*

The core problem with the Commission's conclusion is its mechanical dismissal of the substantial, multi-year import data demonstrating a predictable seasonal ramp-up in the latter half of the year, which renders the [      ] surge figure misleading. While the Commission cursorily acknowledged "some seasonal variations," it failed to perform a meaningful analysis of whether the import volume in question—which encompassed the typically high-demand third and fourth quarters—was actually a deviation from the historical norm sufficient to signal a massive, injurious spike rather than a routine cyclical pattern. Given the average importer lead time of [   ] days in 2024, only shipments arriving after [                  ] could conceivably be motivated by an effort to circumvent the pending remedy. Therefore, attributing the entire comparison period's volume increase to a conscious effort to front-load merchandise and seriously undermine the remedial effect is factually unsound. Furthermore, the subsequent and immediate drastic reduction of import volume in [               ] back to pre-petition levels directly undermines the finding of a sustained "massive" surge and demonstrates the remedial effect of the prospective order was already realized, even before the final determination.

4. *Sales and Operations Data Suggests Subject Imports Unlikely to Seriously Undermine Effect of Order*

As highlighted in Commissioner Johanson's Dissenting Views, the domestic industry earned both an operating and a net profit in the year analyzed (2024). *Id.*, at 5. Furthermore, the domestic industry expanded both installed and practical capacity over the POI, including 2024 and increased research and development ("R&D") expenditures. *Dissenting Views*, at 6; n. 22-23. R&D expenditures for the domestic industry increased by [     ]% from 2022 to 2024.

These data points on the record indicate that, even if the domestic industry has suffered material injury as a result of imports of subject merchandise from China, the imports in the post-petition period prior to the preliminary determination are unlikely to seriously undermine the remedial effects of the antidumping duty order.

5. *High Duty Rates Will Curtail Imports On Their Own*

The affirmative critical circumstances determination is further unsupported by the evidence on the record in light of the substantial antidumping duty rates imposed. The preliminary dumping margins determined by Commerce ranged from 127.35% to 478.09% whereas the final dumping margins ranged from 119.39% to 478.09%. *Commerce's Preliminary Determination*, at 8518; *Commerce's Final AD Determination*, at 26532. Such high rates are "likely to significantly curtail subject imports, if not eliminate them entirely." *Dissenting Views*, at 7. With fewer imports likely to enter the U.S., importers have no incentive to push aggressive sales of the

19

inventory established prior to the preliminary determination. In these circumstances, especially when considered together with the other points addressed herein, there is no factual basis on the record to conclude that the subject imports will seriously undermine the relief afforded to the domestic industry.

6. *Other Tariffs Will Impede or Significantly Reduce the Quantity of Subject Imports*

Beyond the elevated antidumping duty rates mentioned above, importers are also faced with tariffs implemented under other authority. *Id.* As of the time of filing, LSPTVs from China entered under HTSUS subheading 8703.90.01 are subject to tariffs implemented under Section 301 of the Trade Act of 1974 at a rate of 100%. Importers of LSPTVs and subassemblies from China also paid tariffs implemented under the International Emergency Economic Powers Act ("IEEPA") at rates varying from 10% to 30% until the Supreme Court of the United States declared those tariffs unconstitutional. *See id.*; *see also Learning Resources, Inc. v. Trump*, 2026 WL 477534, at *14 (2026). The combined effect of high antidumping duty rates and other tariffs imposed on subject merchandise will impede future imports of subject merchandise, therefore eliminating the risk of serious undermining of the remedial effect of the antidumping duty order.

7. *Subject Imports Have Limited Market Penetration Of Fleet End-Use And Financing Channels*

Finally, another indicator that subject imports of LSPTVs from China entered during the post-petition period from July 2024 to November 2024 are unlikely to

seriously undermine the remedial effects of the antidumping order is the limited penetration of certain corners of the LSPTV market. Evidence on the record shows that subject imports are largely excluded from the fleet end-user and leasing and financing channels. *Dissenting Views*, at 8. The domestic industry's dominance in these segments of the market positions it to remain profitable without critical circumstances, i.e., the need for the exceptional measure of retroactive application of the antidumping duties.

While Commissioner Johanson's analysis appropriately addressed these points, the majority's analysis fails to adequately address a crucial question  as required by 19 U.S.C. § 1673d(b)(4)(A): whether the imports subject to the final affirmative critical circumstances determination are likely to seriously undermine the remedial effect of the antidumping duty order itself. The majority's analysis is silent as to the duties imposed and the foreseeable remedial effect of the antidumping duty order. The Commission's determination is unlawful and unreasonable as it lacks any discussion as to the imposed duty rates and the expected remedial effect. *See Motor Vehicle Mfrs. Assn v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (holding that an agency decision may be arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem.").

## VI.    Conclusion

In light of the foregoing, it is clear that the Commission has failed to adequately examine the evidence on the record in accordance with the legal

standard. The Commission failed to adequately consider the evidence pertaining to seasonal sales trends that result in more imports in the third and fourth quarters despite multiple interested parties submitting arguments and evidence to that effect. The determination of critical circumstances made by the Commission is unsupported by evidence on the record as to whether subject imports "undermine seriously" the remedial effects of the antidumping duty order. As a result, the Commission's final affirmative critical circumstances determination is unsupported by record evidence and otherwise contrary to law.

Therefore, Kangdi Plaintiffs respectfully move, for the reasons set forth herein, this Court to find that agency findings, conclusions, and decisions with respect to the critical circumstances are not supported by substantial evidence or otherwise contrary to law. Kangdi Plaintiffs further move this Court to remand this determination to Commerce for disposition consistent with the Court's final opinion and provide Kangdi Plaintiffs with such other and further relief as this Court may deem just and proper.

Dated: March 18, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1

22

**Consol. Court No. 25-00199**                              **PUBLIC VERSION**

Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan)*
*Co., Ltd. and SC Autosports, LLC, dba Kandi*
*America*

23

Consol. Court No. 25-00199                          PUBLIC VERSION

### Certificate of Compliance with Chambers Procedure 2(B)(2)

The undersigned hereby certifies that the foregoing brief contains 5,144 words, exclusive of the table of contents, table of authorities, and counsel's signature block, and therefore complies with the maximum word count limitation set forth in the Chamber Procedures of the U.S. Court of International Trade.

Dated: March 18, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
/s/ Johnathan Foege
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America*

24