**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **TAO MOTOR INC.**<br>**Plaintiff,**<br><br>**and**<br><br>**KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD. AND SC AUTOSPORTS, LLC, DBA KANDI AMERICA, VEXAS CORPORATION DBA ATLAS,**<br>**Consolidated Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br>**Defendant,**<br><br>**and**<br><br>**THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,**<br>**Defendant-Intervenors.** | **Consol. Court No. 25-00199**<br>**Court No. 1:25-cv-00201-JAR**<br><br>**Public Version**<br>**Business Proprietary Information removed from page: 8** |

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

**LIANG + MOONEY, PLLC**
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670
*Counsel for Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America*

TABLE OF CONTENTS

**I. Introduction.......... 1**

**II. The Commission Failed to Adequately Explain Why Post-Petition Imports and Inventories Were Likely to Seriously Undermine the Order.... 4**

**III. The Seasonality and Lead-Time Evidence Remains Inadequately Addressed.......... 7**

**IV. The Commission's Antidumping Analysis Did Not Adequately Distinguish Xiamen Dalle's Imports.......... 9**

**V. The Commission Failed To Adequately Address Evidence Concerning Domestic Industry Performance and Market Segmentation.......... 11**

**VI. The Commission Failed To Consider Evidence Bearing On The Duration And Seriousness Of The Alleged Inventory Effect.......... 14**

**VII. Nura Does Not Resolve Kangdi Plaintiffs' Substantial Evidence Challenge.......... 15**

**VIII. Conclusion.......... 18**

## TABLE OF AUTHORITIES

**Case(s)**

*Nura USA, LLC v. United States*,
No. 24-182, Slip Op. 26-85 (Ct. Int'l Trade, Aug. 5, 2026)..............................15, 16, 17

*Sweet Harvest Foods v. United States*,
155 F.4th 1355, 1363-64 (Fed. Cir. 2025) ..........................................................2, 14, 15

**Statute(s)**

19 U.S.C. § 1673d(a)(3)..............................................................................................1

19 U.S.C. § 1673d(b)(4)(A) .......................................................................................2, 4

## I. Introduction

Plaintiffs, Kangdi Electric Vehicle (Hainan) Co., Ltd., and SC Autosports, LLC, dba Kandi America (hereinafter referred to collectively as "Kangdi Plaintiffs"), respectfully submit this reply to the responses of Defendant and Defendant-Intervenor {Dkts. 36 and 38, respectively, hereinafter referred to as "*Def.'s Resp. to MJAR*" and "*Def.-Inter.'s Resp. to MJAR*"} to their Rule 56.2 motion for judgment on the agency record ("MJAR") in the above-captioned matter related to the critical circumstances determination regarding low speed personal transportation vehicles ("LSPTV") from the People's Republic of China ("China") issued by the United States International Trade Commission (the "Commission").

Defendant and Defendant-Intervenor repeatedly frame Kangdi Plaintiffs' challenge as an invitation to reweigh the evidence. *See*, *e.g.*, *Def.'s Resp. to MJAR* at 8, 10, 38-39, 42, 46, 48; *Def.-Inter.'s Resp. to MJAR* at 25. That characterization misconstrues Kangdi Plaintiffs' argument.

To be sure, Kangdi Plaintiffs' opening brief used the term "massive" in discussing the Commission's consideration of the post-petition increase in subject imports and, at points, described the Commission as determining whether that increase was "massive." That terminology was not meant to conflate the distinct statutory inquiries. The statute assigns the "massive imports" determination to Commerce under 19 U.S.C. § 1673d(a)(3). Once Commerce makes an affirmative critical-circumstances determination, the Commission conducts a separate inquiry

under § 1673d(b)(4)(A): whether the imports subject to Commerce's affirmative determination are "likely to undermine seriously the remedial effect" of the antidumping duty order, considering, among other factors, the timing and volume of the imports and any rapid increase in inventories. *See Sweet Harvest Foods v. United States*, 155 F.4th 1355, 1363–64 (Fed. Cir. 2025).

That distinction does not alter the substance of Kangdi Plaintiffs' challenge. Kangdi Plaintiffs do not seek review of Commerce's predicate massive imports determination in the instant action or ask the Commission to revisit it. Rather, they challenge whether the Commission adequately explained how the timing and volume evidence before it—including the post-petition increase and evidence concerning seasonality—supported the distinct statutory conclusion entrusted to the Commission, *i.e.*, that the covered imports were "likely to undermine seriously the remedial effect" of the order. The fact that Kangdi Plaintiffs' opening brief used "massive" when discussing that evidence does not eliminate the Commission's independent obligation to evaluate the same timing and volume evidence under § 1673d(b)(4)(A) and reasonably explain the significance it assigned to that evidence.

Kangdi Plaintiffs challenge whether the Commission adequately explained how the facts it identified in its determination establish the statutory conclusion it was required to reach: that the covered post-petition imports were "likely to undermine seriously the remedial effect" of the order. The responses from both Defendant and Defendant-Intervenor largely repeat that imports and inventories increased, that subject imports undersold the domestic product, and that the

domestic industry's performance declined. *See*, *e.g.*, *Def.'s Resp. at 24–25; Def.-Inter.'s Resp. at 9–10.* As to the standard necessary to determine critical circumstances, Defendant-Intervenor expressly argues that the Commission need only find serious undermining "likely," characterizing that as a "far lower standard" than proving actual undermining. *Def.-Inter.'s Resp.* at 8-9. The predictive standard, however, by no means eliminates the Commission's obligation to provide a reasoned explanation for the prediction.

The Commission was required to consider record evidence directly relevant to whether the imports subject to Commerce's affirmative determination were likely to seriously undermine the remedial effect of the order. The record evidence includes data and information regarding recurring seasonal import patterns, ordinary procurement and lead times, meaningful segmentation between fleet and consumer markets, existing trade barriers, and the condition of the domestic industry. Kangdi Plaintiffs do not ask the Court to adopt their preferred inference from that evidence. Rather, they ask the Court to require the Commission to explain why that evidence did not detract from its conclusion. Merely showing that imports increased is not enough; the statutory question remains why those imports were likely to "seriously undermine" the remedy.

## II. The Commission Failed to Adequately Explain Why Post-Petition Imports and Inventories Were Likely to Seriously Undermine the Order

The responses submitted by Defendant and Defendant-Intervenor do not sufficiently address the central deficiency identified by the Kangdi Plaintiffs in their MJAR, *i.e.*, that the Commission failed to adequately explain why it considered post-petition increases in imports and inventories likely to seriously undermine the remedial effect of the antidumping order. The statutory inquiry requires more than mere identification of a post-petition increase; the Commission must determine whether the imports subject to Commerce's affirmative critical circumstances determination are likely to impair the remedy to the degree contemplated by 19 U.S.C. § 1673d(b)(4)(A). *Kangdi Pls.' MJAR* at 14-16. Kangdi Plaintiffs' MJAR further points to evidence that import volumes subsequently declined toward pre-petition levels, which is inconsistent with the premise that the post-petition increase would persist in a manner that seriously impaired the prospective remedy. *Id.* at 11-14.

Defendant responds that the post-petition increases in imports and inventories, together with pervasive underselling, were sufficient to diminish demand for domestic merchandise after duties were imposed and therefore were likely to undermine the remedial effect of the order. *Def.'s Resp.* at 3-4. But identifying these conditions does not establish the necessary nexus to reach a conclusion that they are likely to seriously undermine the intended effect of the

order. Kangdi Plaintiffs' volume, seasonality, and lead-time arguments concern the Commission's obligation to assess the timing and volume of the covered imports and explain why they were likely to seriously undermine the order. The Commission's determination, therefore, needed to explain why the particular inventory overhang would remain sufficiently large and persistent to seriously impair prospective relief. Treating Commerce's predicate massive-import determination and a rise in inventories as effectively sufficient would collapse the Commission's separate statutory inquiry into Commerce's.

Defendant also argues that, "{w}hether stockpiled or already sold," the entire volume of post-petition imports would reduce domestic-industry sales after provisional measures. *Def.'s Resp.* at 29–30. But that assertion assumes the very connection the Commission was required to explain. Merchandise remaining in inventory, merchandise already sold, and merchandise that displaced other subject imports do not necessarily have the same effect on domestic sales after provisional measures. Nor does the gross volume of post-petition imports necessarily correspond, unit for unit, to sales the domestic industry otherwise would have made during that period.

The Commission did not explain why the full post-petition volume represented future domestic sales displaced after provisional measures, rather than sales already completed, substitutions for other imported merchandise, or inventory whose market effect would diminish as imports returned toward pre-petition levels. Without such an explanation, the Commission could not reasonably equate gross

post-petition import volume with the magnitude of post-order impairment necessary to support an affirmative critical circumstances determination.

Underselling likewise does not supply the missing connection between post-petition imports/inventories and serious undermining of the order. Defendant's response emphasizes pervasive underselling and declining import prices as quantities increased. *Id.* at 32-33. While those findings may support a finding of material injury, a finding of critical circumstances requires an explanation as to why the relevant pre-duty imports and inventories are likely to seriously impair the operation of the order going forward. That explanation was particularly necessary in light of Kangdi Plaintiffs' evidence that import volumes subsequently declined. *Kangdi Pls.' MJAR* at 12-14.

Defendant-Intervenor's response and its reliance on "beat the tariff" promotions likewise does not cure this deficiency. Although Defendant-Intervenor argues that dealers continued selling accumulated inventories at low prices after preliminary duties, those advertisements do not establish the aggregate magnitude or duration of the inventory effect necessary to demonstrate serious undermining. *Def.-Inter.'s Resp.* at 5-6, 20-21. Defendant-Intervenor's contention that "likely" imposes a "far lower standard" overlooks that what must be likely is **serious** undermining–not merely some adverse effect. *Id.* at 8-9.

Accordingly, Kangdi Plaintiffs are not asking the Court to reweigh the evidence. The Commission failed to reasonably explain the connection between the volume and inventory evidence and its conclusion that the remedial effect of the

order would likely be seriously undermined. That explanatory gap warrants remand.

## III. The Seasonality and Lead-Time Evidence Remains Inadequately Addressed

Neither Defendant nor Defendant-Intervenor's responses cure the Commission's failure to adequately account for record evidence that the post-petition increase was attributable, at least in material part, to ordinary seasonal patterns. Kangdi Plaintiffs explained that imports historically increased during the latter part of the year and that the Commission's February–June versus July–November comparison therefore juxtaposed periods with predictably different import levels. *Kangdi Pls.' MJAR* at 10-13, 18. The Commission was required to meaningfully consider that evidence in evaluating the statutory factors of timing and volume and failed to adequately explain how it accounted for those seasonal patterns in its determination. Seasonality is thus relevant here not because the Commission must decide anew whether imports were "massive," but because Congress expressly requires the Commission to consider the timing and volume of the imports in deciding whether serious undermining is likely.

Defendant responds that imports increased 35.7 percent between the first and second halves of 2024, compared with 17.9 percent in 2022 and 12.6 percent in 2023. *Def.'s Resp.* at 7, 41–42. Defendant-Intervenor relies on the same comparison. *Def.-Inter.'s Resp.* at 22–23. But a larger seasonal increase in 2024 does not establish that seasonality played no material role in the increase. To the contrary,

the historical increases demonstrate an established seasonal component. The Commission did not adequately distinguish that ordinary component from any incremental volume reasonably attributable to petition-driven front-loading.

The testimony relied upon by Defendant does not resolve this deficiency. In its response, Defendant cites testimony that demand increases during warmer months and that procurement occurs during Q2 and Q3, with deliveries extending into Q4, as supporting only "little or mild" nationwide seasonality. *Def.'s Resp.* at 40–41. Yet that testimony confirms that demand, procurement, and deliveries vary throughout the year and specifically that earlier procurement can produce later deliveries. The Commission therefore needed to account for the relationship between seasonal demand, ordering, lead times, and entry dates before attributing the post-petition increase to efforts to avoid duties.

The Commission's reliance on an average [ ] lead time likewise falls short of establishing causal connection. Defendant infers that the October 2024 uptick reflected orders placed immediately after the petitions because it coincided with the reported average lead time. *Id.* at 42. But Defendant-Intervenor's response identifies substantial variation among major importers' reported lead times—including periods ranging from [ ] days. *Def.-Inter.'s Resp.* at 13–14. That variation undermines reliance on a single industry average to infer why particular imports arrived in October. Temporal coincidence alone does not establish that the petition, rather than ordinary seasonal ordering and delivery patterns, caused the increase.

The Commission failed to adequately reconcile the historical seasonal pattern and varying lead times with its inference that the post-petition increase reflected duty-avoidance behavior in its determination of critical circumstances. Because those facts bear directly on the statutory consideration of the timing and volume of imports, remand is warranted.

## IV. The Commission's Antidumping Analysis Did Not Adequately Distinguish Xiamen Dalle's Imports

Kangdi Plaintiffs' argument concerning Xiamen Dalle is limited to the Commission's antidumping critical circumstances determination. As Defendant explains, Commerce affirmatively determined that critical circumstances existed for Xiamen Dalle in the countervailing-duty investigation, and the Commission therefore was required to include Xiamen Dalle's imports when evaluating whether the imports covered by Commerce's affirmative CVD determination were likely to seriously undermine the CVD order. *Def.'s Resp.* at 42–44; *see also Def.-Inter.'s Resp.* at 23–24. Kangdi Plaintiffs do not contend that the Commission could disregard or revisit Commerce's affirmative CVD determination.

The antidumping determination presents a different issue. Commerce did not make an affirmative critical circumstances determination for Xiamen Dalle in the underlying investigation. *Def.'s Resp.* at 43; *Def.-Inter.'s Resp.* at 14–15; *Kangdi Pls.' MJAR* at 16–17. The relevant statutory inquiry therefore concerned whether the imports subject to Commerce's affirmative antidumping determination—not subject

imports generally—were likely to seriously undermine the remedial effect of the antidumping order. Accordingly, as Defendant-Intervenor itself acknowledges, Xiamen Dalle's import volume and inventories were not relevant to the Commission's consideration of the timing, volume, and inventory accumulation of the imports covered by Commerce's affirmative antidumping determination. *Def.-Inter.'s Resp.* at 14–15

Although Xiamen Dalle's pricing may be relevant to general market conditions or the domestic industry's condition, it does not establish whether the imports covered by Commerce's affirmative antidumping determination were likely to seriously undermine the order. Nonetheless, the Commission's finding in its analysis of critical circumstances in connection with the antidumping order that subject imports undersold the domestic product in all 24 quarterly comparisons improperly included Xiamen Dalle's data. *See Def.'s Resp.* at 32–35; *Def.-Inter.'s Resp.* at 14–17.

Defendant-Intervenor argues that this reliance was harmless because, excluding Xiamen Dalle, underselling still occurred in 21 of 23 comparisons and increased from 69.5 percent in 3 to 91.3 percent in 2024. *Def.-Inter.'s Resp.* at 15–16. But those calculations made within this action do not establish how the Commission would have weighed the corrected findings. The Commission relied on "universal" underselling, and whether it would have assigned the same significance to the narrower results must be addressed by the Commission in the first instance.

Kangdi Plaintiffs therefore do not seek to exclude Xiamen Dalle from every aspect of the analysis. The Commission, however, was required to distinguish general market evidence from evidence establishing the likely effects of the imports covered by Commerce's affirmative antidumping determination. Its failure to do so warrants remand.

## V. The Commission Failed To Adequately Address Evidence Concerning Domestic Industry Performance and Market Segmentation.

Plaintiff does not ask the Court to reweigh the Commission's affirmative material-injury determination, nor does it contend that a "relatively healthy" domestic industry necessarily precludes an affirmative critical-circumstances determination. Plaintiff's argument is narrower: record evidence concerning the domestic industry's condition bears on whether the particular accumulation of imports during the post-petition period was likely to seriously undermine the remedial effect of the orders, and the Commission was required to meaningfully address evidence that detracted from that conclusion. Defendant's response does not demonstrate that the Commission did so.

First, Defendant emphasizes that the Commission identified indicators of declining domestic-industry performance. *See Def.'s Resp.* at 9. Defendant then repeats the Commission's conclusion that "the significant decline in the industry's performance that year { } was likely to exacerbate the adverse impact of the post-petition imports." *Id.* Defendant further points to what it characterizes as

"substantial evidence" of declining performance. *Id.* at 9–10. This, however, does not address the argument Plaintiff actually raised; Plaintiff identified specific record evidence showing that, notwithstanding the Commission's affirmative material-injury determination, the domestic industry earned both an operating and net profit in 2024, expanded its installed and practical capacity over the period of investigation, including in 2024, and increased its R&D expenditures from 2022 to 2024. *See Dissenting Views* at 5–6 & nn.22–23. Plaintiff relied upon these facts not to relitigate material injury, but because they bear directly on the degree of prospective impairment that could reasonably be attributed to the particular accumulation of post-petition imports.

The existence of other indicators showing declining performance does not eliminate the Commission's obligation to address this countervailing evidence. Nor is it sufficient simply to conclude that declining performance made the industry more susceptible to additional harm. The relevant critical-circumstances inquiry required the Commission to assess whether the post-petition imports were likely to *seriously undermine* the remedial effect of the orders. Evidence that the industry remained profitable while expanding capacity and increasing R&D expenditures fairly detracts from the Commission's conclusion that the particular accumulation of post-petition imports was likely to have an effect sufficiently significant to seriously undermine the remedial effect of the order. The Commission was therefore required to explain why, notwithstanding those record indicators, the post-petition imports were nevertheless likely to seriously undermine the orders' remedial effect.

Defendant's response identifies no such explanation; it instead points to contrary indicators of declining performance and repeats the Commission's ultimate conclusion.

Second, Defendant similarly fails to demonstrate that the Commission adequately addressed Plaintiff's evidence concerning market segmentation. Although Defendant asserts that the Commission "considered and reasonably rejected" Plaintiff's argument, *see Def.'s Resp.* at 10, its response principally relies on the Commission's finding that competition and overlap existed between domestic and subject imports notwithstanding the domestic industry's position in the fleet golf-cart market. *Id.* But the existence of some competition across market segments does not resolve Plaintiff's narrower argument. Plaintiff does not contend that the segments were completely insulated from one another or that subject imports never competed with domestically produced golf carts. Rather, the relevant question is whether the domestic industry's position in the fleet market, including its leasing and financing channels, materially limited the portion of the market that the accumulated imports could realistically displace.

A finding of overlap does not itself establish that these structural features had no material limiting effect on the magnitude of prospective displacement. The relevant question was not simply whether subject imports competed with domestic production, but the extent to which the accumulated post-petition imports could realistically displace domestic sales given the domestic industry's position in fleet, leasing, and financing channels. By identifying competition across segments

without addressing that question, the Commission failed to adequately address evidence fairly detracting from its conclusion that the post-petition imports were likely to seriously undermine the remedial effect of the orders.

Accordingly, remand is appropriate because the Commission failed to adequately address evidence fairly detracting from its conclusion that the post-petition imports were likely to seriously undermine the remedial effect of the orders.

## VI. The Commission Failed To Consider Evidence Bearing On The Duration And Seriousness Of The Alleged Inventory Effect

The Commission's failure to establish the necessary nexus is also evident in its treatment of the substantial duties applicable to subject imports. Kangdi Plaintiffs explained that the extraordinarily high antidumping margins, together with Section 301 duties and other tariffs, would sharply constrain subsequent imports and therefore bear on whether the existing inventory could seriously undermine the prospective remedy. *Kangdi Pls.' MJAR* at 19–20.

Defendant responds that *Sweet Harvest*, 155 F.4th, at 1363-64, establishes that neither the statute nor the SAA requires the Commission to consider antidumping or countervailing duty margins or other tariffs. *Def.'s Resp.* at 36–37. Petitioner similarly argues that consideration of those duties would improperly shift the inquiry away from the pre-order imports, and notes that the IEEPA tariffs did

not become effective until after the critical-circumstances period. *Def.-Inter.'s* at 18, 21–22.

But Kangdi need not establish that duty rates are mandatory, standalone statutory factors. The relevant point is narrower. The Commission itself predicted that accumulated duty-free inventories would continue to impair the effectiveness of the order after provisional measures. Once the Commission relied on that prospective theory, record evidence bearing on the duration and seriousness of the asserted inventory overhang was relevant to whether serious undermining was actually likely. *Sweet Harvest* does not permit the Commission to presume that any pre-duty inventory accumulation will necessarily frustrate prospective relief. Thus, while the timing of the IEEPA tariffs reduces their significance, the broader evidence concerning the economic effect of the applicable duties reinforces the Commission's failure to adequately explain why the inventory overhang would seriously impair the remedy.

## VII. *Nura* Does Not Resolve Kangdi Plaintiffs' Substantial Evidence Challenge

Defendant's supplemental authority, *Nura USA, LLC v. United States*, No. 24-182, Slip Op. 26-85 (Ct. Int'l Trade, Aug. 5, 2026), does not alter the analysis here. *Nura* confirms that Commerce and the Commission perform distinct functions in the critical-circumstances inquiry: Commerce determines whether there have been "massive imports" over a relatively short period, while the Commission

determines whether the imports subject to Commerce's affirmative determination are "likely to undermine seriously the remedial effect" of the order. *Id.* at 10–14; *see also Sweet Harvest*, 155 F.4th, at 1363–64. Kangdi Plaintiffs do not dispute that statutory division of responsibility.

Although Kangdi Plaintiffs' opening brief used the term "massive" in discussing the Commission's treatment of post-petition imports, their challenge does not require the Commission to revisit Commerce's massive-imports determination. Rather, Kangdi Plaintiffs challenge whether the Commission adequately explained how the timing and volume of imports, inventories, and other record evidence supported the Commission's separate statutory conclusion that the covered imports were likely to seriously undermine the remedial effect of the antidumping duty order.

*Nura* does not relieve the Commission of that obligation. Although recognizing the Commission's broad discretion in considering timing and volume, the court reiterated that the Commission must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Nura*, at 7. The court then sustained the determination because the Commission provided a case-specific explanation connecting the record evidence to serious undermining. Among other things, the Commission addressed monthly import patterns, the size of the increase relative to the U.S. market, seasonality and declining demand, lead times, and the relationship between post-petition imports and increased inventories. *Id.* at 18–23. The court likewise

emphasized that the Commission had addressed evidence detracting from its conclusions. *Id.* at 19–21, 29–30.

That reasoning supports, rather than forecloses, Kangdi Plaintiffs' challenge. *Nura* does not hold that increases in imports and inventories, underselling, or declining domestic-industry performance necessarily establish serious undermining. It sustained the Commission because the agency reasonably explained the significance of those facts in light of the particular record before it. Here, Defendant and Defendant-Intervenor largely reiterate that imports and inventories increased, subject imports undersold the domestic product, and domestic-industry performance declined. *See, e.g.*, *Def.'s Resp.* at 24–25; *Def.-Inter.'s Resp.* at 9–10. The question remains whether the Commission adequately explained how those facts, considered together with the contrary record evidence identified by Plaintiffs, established that the covered imports were likely to seriously undermine the remedial effect of the order.

Accordingly, *Nura* confirms the Commission's discretion in weighing the statutory factors, but it also confirms the Commission's obligation to provide a reasoned, record-based explanation connecting those factors to its serious-undermining determination. Kangdi Plaintiffs' challenge is that the Commission failed to provide that explanation here.

## VIII. Conclusion

For the foregoing reasons, and those previously set forth in Kangdi Plaintiffs' Motion for Judgment on the Agency Record, Kangdi Plaintiffs reiterate their position that the Commission did not adequately explain how the imports covered by Commerce's affirmative critical circumstances determination in its antidumping investigation were likely to seriously undermine the remedial effect of the antidumping duty order. Kangdi Plaintiffs therefore respectfully request that the Court grant their motion, hold that the Commission's affirmative antidumping critical circumstances determination is unsupported by substantial evidence and otherwise not in accordance with law, and remand the determination to the Commission for reconsideration and further explanation consistent with the Court's opinion.

Dated: September 30, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America*

**Certificate of Compliance with Chambers Procedure 2(B)(2)**

The undersigned hereby certifies that the foregoing brief contains 3,818 words, exclusive of the table of contents, table of authorities, and counsel's signature block, and therefore complies with the maximum word count limitation set forth in the Chamber Procedures of the U.S. Court of International Trade.

Dated: September 30, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
/s/ Johnathan Foege
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America*